DUFFY *v.* WHITE.

1. WARRANTY DEED—AFTER-ACQUIRED TITLE.

A deed containing covenants of warranty is effective to convey a title subsequently acquired.

2. HUSBAND AND WIFE—CONDONATION—CONSIDERATION FOR DEED.

The condonation of a wife's adultery, and her restoration to conjugal rights, afford a sufficient consideration for her deed to her husband.

3. CONFLICT OF LAWS—REAL ESTATE—LEX SITUS.

The legal *status* of persons in relation to real estate is to be determined by the law of the place where the lands are situated.

4. HUSBAND AND WIFE — SEPARATION — AGREEMENT TO RESUME MARITAL RELATIONS—VALIDITY.

An agreement between a husband and wife, who have separated because of the adultery of the latter, providing for a resumption of marital relations in consideration of a conveyance of land by the wife to the husband, to be held in trust for the wife and their minor child, with a provision that, if she is subsequently guilty of flagrant misbehavior or desertion, the husband shall be immediately released from all obligations and from all liability to her under the agreement, is not void as against public policy, where the circumstances under which it was made justify the restriction of the term "flagrant misbehavior or desertion" to such as would be ground for divorce.

5. SAME—UNCONSCIONABLE CONTRACT.

Nor can such an arrangement be said to be unconscionable, at least where the husband signifies his willingness to waive the provision for a forfeiture of the interest of the wife.

Appeal from Wayne; Steere, J., presiding. Submitted October 12, 1897. Decided December 15, 1897.

Bill by Rebecca M. (White) Duffy and Edward F. Duffy, trustee, against Elmer L. White and Margaret Sara White, an infant, to set aside a trust deed. Defendants severally answered, claiming the benefit of a cross-bill. From a decree for complainants, defendants appeal. Reversed.

*Edward F. Duffy* (*T. A. E. & J. C. Weadock*, of counsel), for complainants:

The condonation of the wife's offense, and her restoration to conjugal rights, would not constitute a legal consideration for her deed to her husband. *Merrill* v. *Peaslee*, 146 Mass. 460 (4 Am. St. Rep. 334); *Miller* v. *Miller*, 78 Iowa, 177 (16 Am. St. Rep. 431); *Van Order* v. *Van Order*, 8 Hun, 315; *Roberts* v. *Frisby*, 38 Tex. 219; *Copeland* v. *Boaz*, 9 Baxt. 223 (40 Am. Rep. 89).

*Bethune Duffield* (*Henry M. Duffield*, of counsel), for defendant Elmer L. White:

To the contrary of the foregoing proposition, counsel cited: *Reithmaier* v. *Beckwith*, 35 Mich. 110; *Rozell* v. *Redding*, 59 Mich. 331; *Redding* v. *Rozell*, Id. 476; *Newsome* v. *Newsome*, L. R. 2 P. & D. 306; *Jodrell* v. *Jodrell*, 9 Beav. 45; *Adams* v. *Adams*, 91 N. Y. 381 (43 Am. Rep. 675); *Burkholder's Appeal*, 105 Pa. St. 31; *Wilson* v. *Wilson*, 1 H. L. Cas. 538, 574, 5 H. L. Cas. 40; *Hart* v. *Hart*, 18 Ch. Div. 670, 685; *Sterling* v. *Sterling*, 12 Ga. 201, 204.

*William F. McCorkle*, for infant defendant.

HOOKER, J. The complainant Rebecca M. Duffy married the defendant Elmer L. White, at Bucyrus, Ohio, in 1886, and took up her residence at Pittsburg, Pa., with him. She was the daughter of one Kearsley, of the former place, and was the owner of a contingent remainder in fee of an estate, under a will made by her grandfather, which gave to her father a life estate in said property, with remainder to his (her father's) legitimate issue, if he should leave any; otherwise to his (the testator's) grandchildren, share and share alike. Her father is still living, and has possession of the property. The parties mentioned lived together as husband and wife until June, 1891, at which time the husband sent his wife to her father, and declined to live with her longer unless she should assent to certain conditions. He professed to have discovered her infidelity. Both parties had competent legal counsel,

and the complainant Mrs. Duffy (then White) was advised not to consent to the conditions which he at first imposed, which contained a confession of her adultery. This was eliminated, and on August 15, 1891, at the home of the parties, in Pittsburg, in pursuance of a verbal agreement made at Bucyrus, she executed a conveyance of all of the property in question to one Joseph Mackin, a minor. This instrument was a full warranty deed, except as against the father's life estate, and without condition, but was made with the understanding that Mackin should act as the channel through which the legal title to the property should be conveyed to Elmer L. White for the purposes mentioned in an agreement executed at the same time. In fact, Mackin executed and delivered a deed to White at an earlier hour upon the same day, and never had possession of the deed from Mrs. White. This deed from Mackin was an unconditional deed of bargain and sale, and contained covenants of warranty. It was not like a quitclaim deed, which, as it professes to convey only an existing interest, is ineffective to convey a title subsequently acquired; and neither Mackin nor the complainants can deny its effect as a conveyance of the title, though it was acquired after his deed was delivered to White. *Shotwell* v. *Harrison*, 22 Mich. 410; *Lee* v. *Clary*, 38 Mich. 223; *Smith* v. *Williams*, 44 Mich. 240; *Haney* v. *Roy*, 54 Mich. 635; *Brayton* v. *Merithew*, 56 Mich. 166; *La Coss* v. *Wadsworth*, Id. 421; *People* v. *Miller*, 79 Mich. 93; *Pendill* v. *Agricultural Society*, 95 Mich. 491; *Naylor* v. *Minock*, 96 Mich. 182 (35 Am. St. Rep. 595); *Ryan* v. *U. S.*, 136 U. S. 68.

A trust agreement was executed by White and his wife at the same time that the deed to Mackin was executed, a copy of which agreement is as follows:

"Memorandum of agreement between Elmer L. White, of the city of Pittsburg, county of Allegheny, and State of Pennsylvania, party of the first part, and Rebecca M. White, his wife, party of the second part, is as follows:

"*Whereas*, an estrangement and separation has recently taken place between said parties, which, for the sake of

their minor child, they have agreed to terminate, and resume marital relations; and *whereas,* they have deemed it advisable to reduce the terms of said reconciliation to writing, in order that there may be no misunderstanding in future in regard thereto; and *whereas,* said Rebecca M. White is the owner, in her own right, of certain valuable real estate and property, situated in the State of Michigan, subject, however, to the life estate therein held by her father, Edmund R. Kearsley, of Bucyrus, Ohio, and which said property they have agreed to devote to the common benefit of themselves and of their minor child, Margaret Sara White, as hereinafter provided:

"Now, this agreement witnesseth, in consideration of one dollar to each in hand paid, receipt whereof is hereby acknowledged, and the covenants and agreements hereinafter set forth, said parties agree each with the other as follows:

"*First.* Said second party, for a nominal consideration, is to convey forthwith all of said property to Joseph F. Mackin, of Pittsburg, Pennsylvania, as depositary, who shall, for a nominal consideration, reconvey the same to Elmer L. White. Said conveyances are to be absolute in their terms (reserving, however, the life estate of said Edmund R. Kearsley, as above set forth); but the estate thereby conveyed to the said Elmer L. White shall, as a matter of fact, be merely a trust estate for the uses and purposes herein set forth, and this agreement shall be considered as a part of the consideration therefor.

"*Second.* Said second party further agrees to attempt no extravagances or unnecessary expenses of any kind, and to accept willingly such amount as said Elmer L. White may be able to expend for her maintenance and comfort, and in such sum or sums, and upon such terms, as are hereinafter set forth.

"*Third.* Said second party is to live wherever said Elmer L. White may desire to establish a home, and to offer no unreasonable objections to his choice and selection thereof.

"*Fourth.* Said party of the first part, upon delivery to him of said deed and upon the execution of this agreement, does hereby undertake and agree as follows: (*a*) To provide for his family a comfortable and substantial home in such place as he may decide is for his best interest and that of his family, and in accordance with his means and his income. (*b*) To provide for the reasonable wants and maintenance of his said family out of his own

means, in an amount not exceeding, however, the sum of $3,000 per annum, until the termination of the life estate of said Edmund R. Kearsley in the property this day conveyed to him, above referred to, and the collection by him of the income therefrom.   (c) From the income of the said property collected by him, and after the payment of all necessary disbursements, including taxes, commissions, insurance, repairs, etc., in connection therewith, said first party is to deposit monthly one-half thereof to the credit of the said party of the second part, in such bank as she may select; and, immediately upon such payment to her, said second party is to waive and relinquish all claims upon party of first part for support and maintenance out of his own private funds.   (d) The remaining one-half of said net income is to be applied by the party of the first part for the maintenance and education of said minor child, and for his compensation and services in the management of said property.   (e) Said party of the first part is to have full authority and discretion in the care, improvement, and management of said property, even to the sale, incumbrance, alienation of all or part thereof, and the reinvestment of the proceeds arising therefrom."

It was duly acknowledged and authenticated.

At this point it should be stated that we find from the evidence that the complainant Mrs. White had, by reason of her adultery, given her husband abundant cause for declining to continue the marriage relation.   The execution of the paper mentioned was followed by the resumption of the marital relation, which continued until March, 1894, when the husband found conclusive evidence of her misconduct with different men.   He then left the house, and commenced proceedings for divorce.   About this time she availed herself of the good offices of one Martin Duffy, a policeman, who introduced her to his brother, a lawyer, who is a complainant with her in this case; and he began a suit for her against White, in relation to the home of the parties, and, upon a settlement, White paid to him $7,500, and she agreed that White should have the custody of their child.   In February, 1895, Edward Duffy, with Mrs. White's approval, it is

said, persuaded Mackin to give him a conveyance of the premises; taking an unqualified deed, with full covenants of warranty. Mrs. White, about this time, eloped with Martin Duffy, and lived with him at various hotels about the country for about two years, when, if she is to be believed, she married him. This bill was filed by Mrs. White and Edward Duffy to set aside the instruments executed on the 15th of August, 1891, upon the ground that Mrs. White executed them by reason of the coercion of her husband, and without knowledge of their contents. It was further alleged, in an amended bill, that Mackin had no title when he executed the deed to White, as it was previous to the execution of the deed by Mrs. White to him, and that he had, at her request, subsequently made a deed of the premises to Duffy, who on "February 5th, or a short time thereafter, executed a declaration of trust in her favor."

Mrs. White is the main witness offered on behalf of the complainants, and we find ourselves unable to place any reliance upon her statements, except as they may be corroborated, or are plainly against her interest. From the other testimony, we conclude that, after Mrs. White was sent to her father, her husband was called to Bucyrus by a telegram from her, which was repeated one or more times before he went; that she besought him to forgive her, and that he refused, except upon condition that she should put her property in his hands, where it should be saved from dissipation through her extravagant habits, for the benefit of the daughter and herself, and as a restraint upon her. He left a copy of the proposed document with her, and she consulted counsel concerning it, and subsequently agreed, orally, to the conditions imposed, with the modification before mentioned. Thereupon White took her and her daughter to Pittsburg, but refused to cohabit with her until she should execute the writings, which she did. We have no doubt that he refused to live with her unless she should do so, and in that sense, and no other, she submitted to coercion. We

have no confidence in her version of what occurred that night, in which she is contradicted by all present.

Two questions are presented:

1. Was this contract based upon a valid consideration, and was it one within her power to make?

2. If so, was it an unconscionable contract?

It has been held in this State that a conveyance of property by a husband to his wife in consideration of the discontinuance of a meritorious suit for divorce, and the resumption of marital relations, was upon a valid and sufficient consideration; and the same has been held elsewhere, almost without exception. See *Rozell* v. *Redding*, 59 Mich. 331; *Reithmaier* v. *Beckwith*, 35 Mich. 110; *Adams* v. *Adams*, 91 N. Y. 381 (43 Am. Rep. 675); and other cases cited in the defendants' brief. The case cited from New York expressly holds that the discontinuance of the cause, thereby waiving her right to costs, and the condonation of the offense, whereby her right to divorce was waived and lost, were a sufficient consideration to support the agreement. The authorities are not uniform as to the effect of mere condonation, where no suit for divorce had been commenced, though the weight of authority supports that proposition, also; and the leading case in support of an opposite view ( *i. e., Merrill* v. *Peaslee*, 146 Mass. 460, 4 Am. St. Rep. 334), received the approval of a bare majority of the court. The cases are collected in the briefs of counsel.

The lands in controversy are in the State of Michigan, and the law of this State must therefore govern as to the legal *status* of the husband and wife in relation thereto. They were her separate property, and might be lawfully conveyed by her, through a trustee, to her husband, or by deed directly to him.

We may next examine the contract of the parties, to ascertain whether it contains any provisions that make the transaction void. As to the acknowledgment and the separate examination required by the law of Pennsylvania, it is enough to say that we discredit the tes-

timony of the complainant, contradicting the certificate of the notary.

It is next contended that the agreement is against public policy, and void, because it is an agreement between husband and wife, "looking to and favoring their future separation." The parties had separated, and the arrangement was for a resumption of relations which would restore to Mrs. White a conjugal claim upon her husband, which she had forfeited. The following clause is the one alleged to be against public policy:

"*Fifth.* It is distinctly understood and agreed, however, by and between the parties hereto, that, in the event of the flagrant misbehavior or desertion on the part of the said party of the second part, said party of the first part may immediately consider himself·released of and from all obligations as husband of said Rebecca M. White, and from all liability to her under the terms of this agreement; and in such event said Rebecca M. White hereby agrees to waive and relinquish all claims upon her said husband or his estate for support, dower, or maintenance, as well as all claims to the custody of said minor child, and her share of the income of said property shall be then appropriated by said E. L. White."

This was a Pennsylvania contract, and is to be construed according to the law of that State, whose courts have upheld contracts similar to this one. Such a case will be found in *Burkholder's Appeal*, 105 Pa. St. 31. The contract in that case provided, among other things, for the payment of certain sums in case of a subsequent separation. The case arose after the termination of the marriage by death, and the contract was enforced. The court said, upon this point: "If we concede it to be against the policy of the law, it does not affect the case. No attempt was made to enforce it, and, under the facts as they exist, no such attempt could have been made." The provision in the contract in the present case is peculiar. It does not offer any premium to the wife to bring about a separation. On the contrary, it places a penalty upon it. So it cannot be said to be a contract "looking to and

favoring a separation" at her instance. As·to the husband, it does not enlarge his right to a separation beyond that given by law, if we construe the contract in the light of surrounding circumstances. A proper inference from its provisions, and the circumstances under which it was made, justify us in a restriction of the term "flagrant misbehavior or desertion" to such as would be ground for divorce. If this claim does not enlarge his rights beyond those existing by law, we do not see how it can be said that the provision was illegal and void as against public policy. The following cases seem to support this view. In some of them, though the provisions are held invalid, prominence is given to the fact that *any* separation is within their terms: *Cocksedge* v. *Cocksedge*, 14 Sim. 244; *Earl of Westmeath* v. *Countess of Westmeath*, Jac. 140; *Nicholl* v. *Jones*, 36 Law J. Ch. 554; *H.* v. *W.*, 3 Kay & J. 382.

This brings us to the question whether the arrangement was unconscionable. In the case of *Rozell* v. *Redding*, 59 Mich. 337, a husband conveyed to his wife their homestead, in consideration of her discontinuance of a pending suit for divorce, and the resumption of the marital relation. The parties afterwards separated, and he sought the cancellation of the deed. In that case, although the court seems to have been of the opinion that she did not act in good faith, it held that it was doubtful if he would be entitled to relief if he had kept himself clean and blameless, and that, at all events, his subsequent misconduct precluded the court from balancing equities between them; and his bill was dismissed. That case differs from this in some particulars. Here it was the wife who deeded the property to the husband. There the husband deeded to the wife. Presumably, the amount of the property conveyed is larger in this case than in that, though it was not all of her property in this case, while it may have been all of the husband's property in that case. On the other hand, the conveyance was without condition in that case, while in this it was in trust for the benefit of the wife and

child; and the interests of the wife were much more likely to be protected and preserved under the contract than if left to her own control, if she performed her undertakings by living a blameless life. We can find nothing unconscionable in this transaction, if the wife had lived up to her contract. It was only when she committed further wrongs against her husband and society that there was an opportunity for such claim. So long as she lived with him, she was entitled to one-half of the income of the estate, and the other half was to be used for the benefit of her child and husband.

But it is urged that the provision which is called the "forfeiture clause" has the effect of stripping the wife of all interest in her estate, and is a hard bargain; and it is true that, in the event of her misconduct, she was to have no share in the income. It is said that the consideration was grossly inadequate for such an agreement, and the case is likened to a "catching bargain," where a remainder-man or other person is, through necessity, induced to part with a future estate for a small fraction of its value. We do not take the view that the sacrifice made by this defendant is a small one, that, if to be compensated at all, is fully paid for by a trivial sum. It is one of those cases where money is not an adequate compensation, as the annals of our criminal courts abundantly prove; and, were Mrs. White's various paramours before a court of law as defendants in actions for the invasion of the home of the defendant, it is quite likely that a substantial sum would be found to be the price set upon the injury which he has condoned. Mr. White, apparently in good faith, lived with his faithless wife for several years after, when he was again subjected to disgrace and ignominy. In that, this co-complainant's brother participated; and Edward Duffy himself was ready to aid in the attack upon the husband, and quick to take a conveyance of all her interest in this property, in his own name, upon conditions (if there were any) which did not come to light until after the suit was begun.

It is claimed upon behalf of the defendants that the principal motive of Mr. White in securing the conveyance was to preserve this property, for the benefit of all of the parties, against her well-known extravagance and possible profligacy. If it does nothing else, the dénouement shows that his fears were not groundless, and the necessity of some action in this direction. We may say that a safer contract could have been made, in that security for the performance of the trust might have been provided. Again, the alleged forfeiture clause might have been omitted; but as the defendant asserts that he has no disposition to enforce it, and consents to waive it, we may take care of that in the decree, without determining whether the instrument should be held unconscionable on that account or not, though we may say that neither of these complainants comes here with clean hands, and the case might justly be left to rest upon *Rozell* v. *Redding, supra*, as to them.

It is therefore ordered, adjudged, and decreed that the decree of the circuit court be reversed, and that the property involved in this suit be and remain a trust fund in the hands of said Elmer L. White, in accordance with the terms of said trust agreement, except that portion of the same which provides for the forfeiture of the share of the wife, which, by the terms of said instrument, was to be paid to her. It is further ordered that a copy of the decree in this cause, and the writing aforesaid, be recorded by the defendants in the register's office of each and every county where any portion of said property is situated, and that, in case of a failure so to do, the complainants may see that the same is done. The defendants will recover costs of both courts.

The other Justices concurred.