**FIRST NATIONAL BANK OF FAIRBANKS,**
Appellant,

v.

**Warren ENZLER and Dorothy J. Enzler, Appellees.**

**Howard D'SPAIN, Trustee in Bankruptcy,**
Appellant,

v.

**Warren ENZLER and Dorothy J. Enzler, Appellees.**

**No. 2181**

Supreme Court of Alaska.

June 30, 1975.

Rehearing Denied Aug. 22, 1975.
See 539 P.2d 80.

Saul R. Friedman, John S. Hedland, Rice, Hoppner & Hedland, Anchorage, for appellant First National Bank of Fairbanks.

William M. Erwin, Anchorage, for appellant Howard D'Spain.

Richard F. Lytle, Houston and Lytle, Anchorage, for appellees.

Before RABINOWITZ, C. J., and CONNOR, and BOOCHEVER, JJ.

## OPINION

BOOCHEVER, Justice.

On this appeal, we are presented with the question of whether Mr. Enzler's transfer of all his property to his wife should be set aside as a fraudulent conveyance. This case has its origins in an ill-fated business venture entered into between appellee Mr. Enzler and Mr. Gordon Frye in which Mr. Enzler agreed to demonstrate a certain model of Bellanca aircraft in return for a five percent commission on any sales generated by his demonstration. In furtherance of this plan, Mr. Enzler purchased a Bellanca airplane for the sum of $34,720.00, $27,517.90 of which he borrowed from the First National Bank of Fairbanks on a six-month note due November 16, 1969. The Bank entered into a security agreement with Mr. Enzler for the loan with the airplane as collateral.

During the six months that he had possession of the airplane, Mr. Enzler demonstrated it to 30 or 40 people, but no sales resulted. When the note came due, Mr. Enzler was unable to meet his obligation under it. The Bank directed him to return the airplane by flying it to Anchorage International Airport and leaving it, which he did sometime in late November or early December 1969. At the time the plane was returned, it was thought to be worth more than the debt owed. Mr. Carpenter, the Bank's loan officer who was involved in this loan and who had financed in excess of 100 airplanes during the course of his career, testified that after one year of use, the market value of the plane would be about $29,000.00. Mr. Carpenter further testified that a plane with less than 120 hours on the engine, as was the case with this particular plane, would be classified as nearly new. After returning the plane, Enzler continued to negotiate with the Bank in an attempt to regain the plane, but no feasible agreement could be reached.

On February 11, 1970, Mr. Enzler executed two warranty deeds and an assignment by virtue of which he transferred his interest in any property, real or personal, to Mrs. Enzler. The deeds were properly recorded in the Kenai Recorder's Office. Testimony by both Mr. and Mrs. Enzler was to the effect that significant marital discord had evolved out of Mr. Enzler's recurring business failures[1] through which he had managed to reduce a $17,000.00 savings account to $3,000.00 in the course of a year. As a result of Mr. Enzler's financial ineptitude, Mrs. Enzler became concerned for her own and her family's welfare and insisted that Mr. Enzler would either have to leave the family by way of divorce[2] or sign over all his interest in their assets to her so that she would have complete control of the family's remaining

[1] Other than his attempt to enter the airplane business, Mr. Enzler attempted to set up a joint sawmill enterprise in Seward through which he lost $4,000.00; he paid in excess of $10,000.00 for stock which now is worth only a fraction of that amount; and he also attempted to aid in a logging operation between Hope and Portage in which he lost $10,000.00.

[2] Mrs. Enzler testified that she did consult a Mr. Hornaday with regard to the possibility of a divorce and that Mr. Enzler was aware of this, but that Mr. Hornaday counseled against such action.

property. Following this transfer of assets, Mr. Enzler continued to live with the family and operate the family sawmill as he had before.

In early May 1970, Mr. Enzler received notice that the plane would be sold to the highest bidder at a sale to take place on May 18, 1970 at Safeway Airways. Mr. Enzler tried to attend the sale, but it was not held at the place specified. However, the plane was sold on the 18th to the Bank for $26,000.00. The plane was then subsequently sold by the Bank for the sum of $22,500.00. The Bank claimed a deficiency of $12,307.06 and commenced a lawsuit against Mr. Enzler for that amount. The Bank's action for the deficiency was later dismissed on the Bank's motion.

After consulting an attorney, Mr. Enzler filed a petition in bankruptcy on September 24, 1971. The trustee in bankruptcy thereafter filed a complaint in superior court seeking to have the February 11, 1970 conveyance between Mr. and Mrs. Enzler set aside as fraudulent. Because of the Bank's status as a creditor, it was joined as a nominal defendant in the suit. On June 8, 1973, Judge Hanson filed his memorandum opinion in the case finding the transfer not to have been fraudulent for the reasons that there was no debt owing at the time of the conveyance, that the conveyance was for sufficient consideration[3] and that there was no intent to defraud creditors. Costs and attorney's fees were awarded to Enzler.

The trustee in bankruptcy and the Bank appeal from this decision contending that the Bank was in fact a creditor of Mr. Enzler at the time of the challenged transfer, that the transfer was not supported by adequate consideration and that the evidence presented below proved an intent on the part of the Enzlers to defraud the Bank by means of the transfer. The Bank also protests the award of costs and attorney's fees against it as inequitable since it did not initiate the action, but rather was joined as a defendant by plaintiff D'Spain.

The primary question confronting us on this appeal is whether the transfer challenged here is to be rendered void as in violation of AS 34.40.010 which provides:

> A conveyance or assignment, in writing or otherwise, of an estate or interest in lands, or in goods, or things in action, or of rents or profits issuing from them or a charge upon lands, goods, or things in action, or upon the rents or profits from them, made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, or a bond or other evidence of debt given, action commenced, decree or judgment suffered, with the like intent, as against the persons so hindered, delayed, or defrauded is void.

Inasmuch as the acts condemned by AS 34.40.010 are, by the terms of the statute, dependent upon the existence of a debtor-creditor relationship, we must initially examine the facts of the present case to determine whether such a relationship existed. The Enzlers contend that at the time of the February 11, 1970 transfer, no debt was owing the Bank. The trial court agreed with the Enzlers' contention in this regard.[4]

---

3. On the question of consideration, the trial court wrote:

The instruments conveying the property recited that there was consideration of one dollar and for the reason that the grantee had kept up the taxes. Testimony at the trial was to the effect that the wife had paid off other debts of the husband for consideration at the time of the transfer and that the wife had issued an ultimatum that she must have the property in her name or the husband would have to leave the family.

The fact that the wife contributed substantially to the assets, that she worked and continues to work when her husband cannot, and that she consulted an attorney to see about a divorce suggests that the transfer was for consideration and to prevent the husband from further dissipating the assets rather than as a sham.

4. On this point, the trial court stated:

The court finds from the evidence that there is no showing that a debt was due and owing

■ On this aspect of the appeal, the Enzlers argue that, since the plane was worth more than the debt owed the Bank at the time the plane was returned, the return of the plane satisfied Mr. Enzler's obligation to the Bank. Such an argument is flawed by the fact that the estimated value of collateral when returned does not determine whether the debt thereby secured is satisfied. Rather, it is the amount for which the collateral may be sold at a subsequent execution sale that determines whether the obligation is extinguished.[5] Until such time as this latter amount is determined, one in the position of Mr. Enzler remains potentially liable on the debt to the extent that the amount owed exceeds the sale price. Although the liability in the interim period is contingent in that it will only arise should the collateral sell for less than the amount owing, this fact does not preclude the present existence of a debt owed by the contingently liable party to the secured creditor. The Uniform Fraudulent Conveyance Act defines a debt as including "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or *contingent*".[6]

■ That a contingent debt may be the basis of a debtor-creditor relationship under our fraudulent conveyance statute is apparent from the holding of the Oregon Supreme Court in *Hillsboro Nat. Bank v. Garbarino*.[7] Interpreting a statute virtually identical to AS 34.40.010, the Oregon court stated:

> We observe that the term "creditors" is not restricted to those whose demands are overdue. The statute is in favor of all creditors, and not any particular class of them. It is quite as culpable for the debtor to alienate his property with intent to defraud one whose claim is not yet due as thus to seek to injure one whose demand has matured. To distinguish between the two wrongs is not consonant with sound logic.[8]

Consequently, we find that at the time of the February 11, 1970 transfer, a debt was owed the Bank, which therefore was a creditor of Mr. Enzler.

■ We now turn to the question of whether Mr. Enzler's transfer of all his assets to his wife was fraudulent with regard to his then creditor, the Bank. The law in Alaska is that in cases such as this, the intent to defraud will not be presumed.[9] Rather, it is a question of fact usually to

at the time of the transfer of property to the wife. Testimony by Mr. and Mrs. Enzler and the deposition of Mr. Carpenter show that due to a sizeable down payment, the aircraft at the time it was returned to the bank was valued at more than the outstanding balance due the bank.

5. While AS 45.05.790(b) allows the secured party the option of retaining the collateral as satisfaction for the debt with the consent of the debtor, this option was not exercised here. Thus, the debt was not extinguished by the return of the plane to the Bank. AS 45.05.788 specifies the manner in which a secured party such as the Bank may dispose of the collateral and distribute the proceeds of such a disposition.

6. Uniform Fraudulent Conveyance Act § 1 (emphasis added). Since the Uniform Fraudulent Conveyance Act, insofar as it is referred to here, codifies the common law [Blumenstein v. Phillips Ins. Center, Inc., 490 P.2d 1213, 1222 n. 12 (Alaska 1971); Neal v. Clark, 75 Ariz. 91, 251 P.2d 903 (1952)] and since Alaska is a common law state in this area (*see Blumenstein, supra*), it may be assumed that the Uniform Act as quoted above correctly states the Alaska law.

7. 82 Or. 405, 161 P. 703 (1916).

8. *Id.* at 706.

9. Blumenstein v. Phillips Ins. Center, Inc., 490 P.2d 1213, 1218 (Alaska 1971); Matheson v. Patenaude, 8 Alaska 238, 246 (D. Alaska 1930); Courtnay v. Brenneman, 6 Alaska 233, 235 (D.Alaska 1920). *See also* AS 34.40.090 which states:
> The question of fraudulent intent in a case arising under the provisions of this chapter is a question of fact, and not of law.

We decline appellant's request to overturn this long standing rule and adopt in its place § 4 of the Uniform Fraudulent Conveyance Act which provides:
> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent

be proved by circumstantial evidence.[10] Appellants refer the court to *Evans v. Trude* [11] as a case in which many of the circumstantial facts which may be combined to prove the ultimate fact of intent to defraud are enumerated.

The badges of fraud here are as clearly apparent as they are multitudinous. The compelling ones in terms of long-recognized indicia of fraud are: (1) The consideration . . . is inadequate. . . . (2) The transfer of the property was in anticipation of a pending suit . . . .. (3) The transferor-debtor was insolvent . . . .. (4) There was a failure to record the instrument within a reasonable length of time . . . .. (5) The conveyance was a transfer of all or substantially all the debtor's property . . . .. (6) The retention of possession of the premises by the grantor from the date of the execution of the deed . . . stands unexplained . . . .. (7) The transfer so completely depleted the assets of Dale Trude that his creditor, the plaintiff, has thereby been hindered and delayed in re-

covering any part ' of his judgment. . . . (8) The relationship of the parties becomes an additional badge of fraud when there also appear other circumstances which of themselves incite distrust and suspicion . . . .. [12]

While such facts as these are to be considered in determining whether a transfer will be found fraudulent, we have indicated that the weight to be accorded these facts will vary depending on the case.

Badges of fraud must be viewed within the context of each particular case, and where their presence is satisfactorily accounted for, or where their existence is not inconsistent with a construction of the transaction as a valid one, they deserve to be accorded little weight.[13]

Said to be badges of fraud in this case are the lack of consideration for the transfer of all of Mr. Enzler's assets, Mr. Enzler's continued use and employment of the property much as he had prior to the transfer and Mr. Enzler's awareness at the time of the transfer of the possibility that the Bank would seek a deficiency judgment against him.

---

as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

This particular section has been said not to be a codification of the common law. Neal v. Clark, 75 Ariz. 91, 251 P.2d 903, 905–06 (1952). Nor is this a case which fits within AS 09.25.060 which provides:

Every sale or assignment of personal property unless accompanied by the immediate delivery and the actual and continued change of possession of the thing sold or assigned is presumed prima facie to be a fraud against the creditors of the vendor or assignor, and subsequent purchasers in good faith and for a valuable consideration during the time the property remains in the possession of the vendor or assignor, except that retention of possession in good faith and current course of trade by a merchant seller for a commercially reasonable time after a sale or identification is not fraudulent, and nothing contained in this section shall supersede the provisions of the Uniform Commercial Code.

Construing the similarly worded predecessor to AS 09.25.060, the court in Meredith v.

Thompson, 4 Alaska 360, 365–66 (D.Alaska 1911), held that the presumption of fraud would apply also to real property when transferred by the same instrument as personal property with possession remaining in the transferor. We noted in Blumenstein v. Phillips Ins. Center, Inc., 490 P.2d 1213, 1219 (Alaska 1971), that where there is a reasonable explanation for the transferor's continued possession of the transferred property, the presumption of AS 09.25.060 will be dispelled. The very relationship between the parties herein provides a reasonable explanation of Mr. Enzler's continued use of the property transferred. The trial court did not err in holding "[t]he presumption of AS 09.25.060 has been rebutted by the showing of a good faith transfer".

10. Blumenstein v. Phillips Ins. Center, Inc., 490 P.2d at 1218–20.

11. 193 Or. 648, 240 P.2d 940 (1952). *See also* Matheson v. Patenaude, 8 Alaska 238, 241 (D.Alaska 1930).

12. 240 P.2d at 944.

13. Blumenstein v. Phillips Ins. Center, Inc., 490 P.2d at 1223 (footnote omitted).

The Enzlers argue that the transfer was supported by consideration from any of three sources. They place greatest emphasis on the fact that the transfer was in exchange for Mrs. Enzler's forbearance in a divorce action against Mr. Enzler. However, they refer the court to no authority supporting this position.[14] However, appellants cite several cases to the contrary, the most apposite being *Oppenheimer v. Collins*.[15] In that case, as here, a creditor attacked as fraudulent a conveyance from Mr. Collins to Mrs. Collins of the former's interest in an inheritance for the sole consideration of the withdrawal by Mrs. Collins of her action for divorce and her consent to continue marital relations. While recognizing that the wife had valid grounds for her divorce action, the court stated with reference to her relinquishment of this meritorious action:

> Another most cogent reason [for not recognizing forbearance from divorce suit as valuable consideration] is the utter inability to protect the rights of creditors in the property of a husband if such contracts can be deemed a valid consideration.[16]

Our independent survey of the authority in this area indicates that in those cases which held one spouse's forbearance in pursuing a meritorious divorce action to be valid consideration for a transfer of property from the other spouse only the two spouses were involved.[17] We are not called upon here to decide whether such consideration is valid as between the husband and wife alone, but rather whether such consideration is valid as against a third party creditor. For the reason expressed by the Wisconsin Supreme Court, we think not.

Also urged by the Enzlers as consideration for the transfer is Mrs. Enzler's assumption of some of her husband's debts. Specifically, reference is made to a $5,000.00 loan to Mr. Enzler from the National Bank of Alaska to consolidate previous debts amassed as a result of purchases of sawmill equipment. While there was some question as to whether Mrs. Enzler was a co-obligor on this loan, the trial court apparently found that she was not when it stated: "Testimony at the trial was to the effect that the wife had paid off other debts of the husband. . . ." But even if Mrs. Enzler was not obligated on the note, we do not think that her payment of the $5,000.00 loan can serve as consideration for the transfer to her of all her husband's assets. The financing statement which Mr. Enzler filled out for the Bank listed his total assets as being in excess of $128,000.00 with total liabilities of less than $4,000.00. Assuming that Mrs. Enzler held an equal interest in these assets, she still received in excess of $60,000.00 worth of assets in exchange for the assumption of a $5,000.00 obligation. In *Blumenstein v. Phillips Ins. Center, Inc., supra,* we adopted the proposition that inadequate consideration will be found where

> the disparity between the true value . . . and the price paid is so great as to shock the conscience and strike the understanding at once with the conviction that such transfer never could have been made in good faith.[18]

14. The Enzlers cite Simmons v. Simmons, 522 P.2d 171 (Alaska 1974); Mullaly v. Mullaly, 518 P.2d 1395 (Alaska 1974); Vanover v. Vanover, 496 P.2d 644 (Alaska 1972), as supportive of their position. However, these cases deal with the discretion of the trial court in dividing property in the context of a divorce.

15. 115 Wis. 283, 91 N.W. 690 (1902). Portions of this opinion not relevant here were overruled in Ripon Hardware Co. v. Haas, 157 Wis. 466, 145 N.W. 1096 (1914).

16. 91 N.W. at 691 (citation omitted).

17. Holsomback v. Caldwell, 218 Ga. 393, 128 S.E.2d 47 (1962); Duffy v. White, 115 Mich. 264, 73 N.W. 363 (1897); Mack v. Mack, 87 Neb. 819, 128 N.W. 527 (1910); Campbell v. Prater, 64 Wyo. 293, 191 P.2d 160 (1948).

18. 490 P.2d at 1220 n. 8, quoting from White v. Nollmeyer, 151 Mont. 387, 443 P.2d 873, 883 (1968); Gransbury v. United Bldg. Supply, Inc., 531 P.2d 1247, 1249 (Alaska 1975).

Under this standard, we find the assumption of a $5,000.00 obligation to be inadequate consideration for the transfer of more than $60,000.00 worth of assets.

■ Finally, the Enzlers point to certain recitations of consideration contained in the instruments of transfer[19] as proof that the transfer was supported by sufficient consideration. Appellants point out, however, that "[t]he recitals in [these instruments] are not alone sufficient to establish the fact of consideration".[20] If these recitations are to be the basis of a finding of sufficient consideration, the facts recited must find independent verification in the record.[21] A careful review of the record reveals no such corroboration of the recitations in the deed, and we therefore find that these recitations do not establish consideration for the transfer.

■■ Our finding that the transfer of assets by Mr. Enzler to his wife was not supported by adequate consideration does not alone necessitate a conclusion that the transfer was made with a fraudulent intent. The other "badges of fraud" mentioned by the Bank and D'Spain must first be considered. With regard to the fact that Mr. Enzler was left insolvent following the transfer, there is quite obviously a satisfactory explanation since the purpose of the entire transaction was expressly to place Mr. Enzler in such a state that he could no further dissipate the remaining family assets. Similarly, concerning Mr. Enzler's unchanged lifestyle, this also was a purpose of the transaction, at least insofar as Mr. Enzler was concerned, since in exchange for his transfer of all his assets to his wife, she allowed him to remain with the family and continue on as he had before the transfer. Finally, the possibility that the Bank might have sought a deficiency judgment against Mr. Enzler does not by itself place Mr. Enzler in the posture of a debtor who transfers property in anticipation of a pending suit as perhaps appellants seek to suggest. In the context of proving an intent to defraud creditors, there must be a distinction made between the transfer of property by a contingent debtor who, while aware of the possibility of owing a debt at some future time, reasonably concludes that that possibility will not arise, and the debtor who believes a suit is in the offing and who, in anticipation thereof, conveys property. The bona fide nature of the transfer in the former case is significantly less subject to suspicion than in the latter.

A perusal of the other "badges of fraud" not specifically mentioned by the appellants but enumerated in *Evans* indicates that in the present case, they are either not present or there exists an adequate explanation for their presence. The deeds by which Mr. Enzler conveyed his real property to his wife were promptly recorded.

---

19. By warranty deeds, Mr. Enzler conveyed to his wife his interest in the remaining acreage of their homestead and his interest in the property upon which they now live. With regard to the first interest, the deed stated that the transfer was for one dollar and other good and valuable consideration and further:

This conveyance is made for the reason that Grantor has been operating his personal business at a loss and the Grantee has been primarily responsible for keeping taxes paid and general maintenance of property.

As to the second deed, after the recitation of one dollar and other good and valuable consideration, the deed stated:

This conveyance is made for the reason that the Grantee has actually contributed the major share of the purchase price and cost of acquisition and this merely clarifies the status of the title which, for all practical purposes, should be in Grantee regardless of the manner in which it was originally acquired . . . .

The assignment of personalty merely recited that it was made for good and valuable consideration.

20. Temple v. Jones, Son & Co., 179 Va. 286, 19 S.E.2d 57, 62 (1942).

21. *See* Smith v. Wilder, 270 Ala. 637, 120 So.2d 871 (1960); Murphy v. Casey, 151 Minn. 480, 187 N.W. 416 (1922); Temple v. Jones, Son & Co., 179 Va. 286, 19 S.E.2d 57 (1942); Hutcheson v. Savings Bank of Richmond, 129 Va. 281, 105 S.E. 677 (1921).

As noted, the fact that the transfer involved all of Mr. Enzler's assets is satisfactorily explained. At the time of the transfer, there was no judgment outstanding against Mr. Enzler. While the relationship between the Enzlers is generally considered one which would excite suspicion in this context, there do not appear to be such other circumstances existing in the present case as would "of themselves incite distrust and suspicion".[22]

█ On the whole, while there are facts in the instant case which tend to cast suspicion on the bona fide nature of the transfer,[23] they are not such as to allow us to say that the trial court's finding was clearly erroneous.[24] We thus affirm the lower court's decision that the transfer by Mr. Enzler of all his assets to his wife was not done with the intent to defraud the Bank and, therefore, is not void under AS 34.40.010.

Having concluded that the Enzler's had no intention of defrauding the Bank, the lower court awarded costs and attorney's fees against the Bank and in favor of the Enzlers in the amount of $1,531.95. In making such an award, the court reasoned that

> . . . an award of said costs against the named plaintiff in his official capacity would be inappropriate as his action was brought in the discharge of his official duties for the benefit of the creditors of the defendant WARREN ENZLER and in particular the FIRST NATIONAL BANK OF FAIRBANKS, who regardless of title in the above caption was the true prosecutor of the action—in effect, the real plaintiff. The bank conceded this role by its appearance and answer dated January 21, 1972, and throughout the proceedings was the obvious primary opponent of the ENZLERS. Of the parties appearing, only the bank stood to profit by a judgment in favor of the named plaintiff.

The Bank argues that it is inequitable to award attorney's fees against it in this case because the Bank was only made a party through the exercise of the trustee's discretion to join creditors of the bankrupt. While the Bank admits taking an active part in the suit, it contends that had it taken no part at all, Mr. Enzler still would have had to defend the action, incurring substantially the same costs and attorney's fees.

To the contrary, the Enzlers point out that they anticipated from the beginning the problems which would arise concerning costs and attorney's fees should they prevail. They moved to have the trustee post a cost bond so that they might have something out of which to recover their costs. The Bank opposed this motion which opposition was adopted by the trustee D'Spain. The Enzlers argue that the Bank would have no reason to oppose this motion were it operating as another defendant, independent of the trustee. The Enzlers also point to the Bank's active participation at trial, and its joining of the trustee on all issues raised on appeal as evidence of the fact that the Bank's real interest lay with the plaintiff.

█ Alaska Rule of Civil Procedure 82 provides the court both with the authority to grant attorney's fees to the prevailing party and with guidelines as to the amount. This court has had numerous opportunities to deal with challenges to

22. Evans v. Trude, 193 Or. 648, 240 P.2d 940, 944 (1952) (citations omitted).

23. We particularly refer here to Mrs. Enzler's purchase of a new airplane ten days after her husband's debts were discharged in the bankruptcy proceeding. The title to the airplane was put in Mr. Enzler's name. Such action hardly seems consistent with the asserted motivation for the challenged transfer which was to keep assets out of Mr. Enzler's control.

24. The question of fraudulent intent is a question of fact (AS 34.40.090), and such a finding of fact will not be reversed on appeal unless clearly erroneous. Alaska R.Civ.P. 52(a).

awards of costs and attorney's fees and has held that the determination of which party prevails and is entitled to costs is within the discretion of the trial judge.[25] We agree with the trial court's alignment of the Bank as a plaintiff below. While the Bank's argument that the costs and attorney's fees the Enzlers incurred would have been the same had it not been a party to the action has some merit, the appeal of this argument is significantly diminished by the Bank's opposition to Enzlers' motion for a cost bond. On the facts of this case, we cannot say that the award of $1,531.95 costs and attorney's fees against the Bank constituted an abuse of the trial court's discretion.

Affirmed.

ERWIN, J., not participating.

25. De Witt v. Liberty Leasing Co., 499 P.2d 599 (Alaska 1972).