STATE of Alaska, DEPARTMENT OF CORRECTIONS, Appellant,

v.

Kirby D. ANTHONEY, Appellee.

No. S–13396.

Supreme Court of Alaska.

April 16, 2010.

Marilyn J. Kamm, Assistant Attorney General, and Daniel S. Sullivan, Attorney General, Juneau, for Appellant.

Kirby D. Anthoney, pro se, Seward.

Before: FABE, WINFREE, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Kirby Anthoney, an inmate at the Spring Creek Correctional Center (SCCC), was charged with and found guilty by the SCCC disciplinary committee of "mutual combat." Anthoney appealed, arguing that he was not guilty of "mutual combat" and that the Department of Corrections had violated his procedural due process rights. The superior court concluded that Anthoney had been charged with the wrong offense, ordered that his disciplinary record be changed to reflect a guilty finding for a lesser infraction, and affirmed the disciplinary committee decision in all other respects. The superior court then named Anthoney the prevailing party

and awarded him costs. The State only appealed the superior court's prevailing party designation. Because we conclude that the superior court correctly designated Anthoney as the prevailing party, we affirm the superior court's ruling.

## II. FACTS AND PROCEEDINGS

### A. Facts

Kirby Anthoney is an inmate at Spring Creek Correctional Center. While working in the SCCC kitchen on July 20, 2006, Anthoney was involved in an altercation with fellow inmate Fernando Jimenez. Erik Nielsen, a maintenance plumber, witnessed and reported the altercation over the radio and later described the altercation in an incident report. As Nielsen reported, Anthoney said to Jimenez "something to the effect of 'You must be one of the dumbest guys in the United States,' " and Jimenez "responded by running the 10 to 15 feet distance between them and hit [Anthoney] on the side of his face." Anthoney disputed this series of events. He claimed that Jimenez asked, "You got a problem, you got a problem," he then accused Jimenez of "acting like a jerk," and Jimenez then called him a "rat" and swung at him.[1] Anthoney also claimed that he called Jimenez "one of the stupidest guys in the institution" only after Jimenez swung at him, and because Jimenez did so in front of the security camera. Both Nielsen and Anthoney agreed that Anthoney never struck back.

At least one officer responded to Nielsen's radio call, escorted both inmates away in "hard restraints," and placed them in administrative segregation. Anthoney requested that the security video footage from the kitchen at the time of the altercation be saved for viewing by the disciplinary committee, but the footage was not saved.

### B. Proceedings

On July 28, 2006, the SCCC disciplinary committee held Anthoney's disciplinary hearing. Anthoney was charged with the "high-moderate" infraction of "mutual combat" but pled not guilty. At the hearing, Anthoney presented his story of the altercation, insisted that the security video would have verified that story, requested that inmate Michael McCullough testify on his behalf, and requested leniency in light of his history of appropriate behavior. The disciplinary committee did not view the video and apparently did not allow Anthoney's witness to testify. Relying on Nielsen's incident report, the disciplinary committee found Anthoney guilty of "mutual combat" and sentenced him to thirty days of punitive segregation. The committee reasoned that either physical or verbal assault could constitute "mutual combat" because an inmate must respond to either type of assault or risk being considered "a punk."

Anthoney appealed the committee's decision to the SCCC superintendent. Also relying on Nielsen's incident report, the superintendent affirmed the finding of guilt but reduced the sanction to fifteen days of punitive segregation "due to otherwise appropriate behavior." Anthoney requested reconsideration, stating that after the denial of his appeal, he obtained testimony from inmate Michael Flynn who had been in the kitchen at the time of the altercation and who would corroborate Anthoney's version of the events. The request was denied. Because Anthoney had "exhausted all [d]epartmental levels of appeal," he was placed in punitive segregation from November 27 through December 12.

Anthoney appealed to the superior court. On June 21, 2007, Superior Court Judge Stephanie E. Joannides ordered the State to file a notice of preservation of the security video or an affidavit explaining what happened to it. In response to that order, the SCCC superintendent filed an affidavit stating that video footage is not shown to inmates for security reasons, that no relevant video footage existed because security cameras did not record the area where the altercation occurred, and that all video footage is recorded over every thirty days. On May 23,

---

1. This description of Anthoney's version of events is drawn from his request for reconsideration mentioned in subsection B, *infra*. Anthoney did not admit accusing Jimenez of "acting like a jerk" during his disciplinary hearing.

2008, the case was reassigned to Superior Court Judge Morgan Christen.

Anthoney raised twenty-four points in his appeal. The superior court concluded that four of those had been waived because Anthoney had not raised them in the proceedings below. It grouped the remaining points into seven categories: (1) failure to write a proper incident report; (2) failure to allow a witness to be called, to allow state of mind evidence, and to explain reasons for denial in writing and on record; (3) failure to admit video footage and to explain reasons in writing and on record; (4) failure to write a report stating the specific evidence used to find appellant guilty; (5) incorrect definition of mutual combat; (6) insufficient evidence and reliance on hearsay; and (7) denial of appellant's motion for reconsideration. Anthoney also claimed the State knowingly and intentionally violated his rights. He requested amendment of his disciplinary record, reinstatement to the position he occupied before he was found guilty, and lost wages.

On September 22, 2008, the superior court granted Anthoney's appeal on his claim that the State "improperly included a verbal assault within the definition of 'mutual combat.'" The superior court reasoned that "[u]sing abusive language in such a way that invites retaliation is not 'mutual' and ... is not 'combat'" and concluded that the evidence did not support a finding of guilt for mutual combat but for the lesser infraction of "using abusive or obscene language."[2] As the superior court indicated, a charge for the lesser infraction was supported both by Niel-sen's statement that Anthoney called Jimenez "one of the dumbest guys in the United States" before Jimenez hit him and by Anthoney's statement that he accused Jimenez of "acting like a jerk" before Jimenez hit him. The superior court ordered that Anthoney's disciplinary record be amended to reflect a finding of guilt for the "low-moderate" infraction set out in 22 AAC 05.400(d)(13).[3] It denied Anthoney's other appeal points and affirmed the disciplinary committee's decision in all other respects.[4]

On October 20, 2008, Anthoney filed a motion for an award of costs. The State made two arguments in opposition: (1) that Anthoney's motion was untimely and (2) that Anthoney was not the prevailing party. The superior court found that because the clerk of court did not provide Anthoney with the necessary form regarding costs and attorney's fees until October 10, Anthoney's motion was timely. The superior court also found that, while Anthoney did raise twenty-four appeal points, the primary issue on appeal was whether Anthoney had been charged with the correct offense, and Anthoney prevailed on this main claim. The superior court awarded Anthoney $411.44 in costs. The State appeals the superior court's designation of Anthoney as the prevailing party and its order awarding him costs.

## III. STANDARD OF REVIEW

 We review for abuse of discretion a trial court's determination of the prevailing party for purposes of awarding attorney's fees and costs.[5] This is the appropriate stan-

---

**2.** In relevant part, 22 Alaska Administrative Code (AAC) 05.400 provides:
 (c) High-moderate infractions include the following:
 (1) fighting (i.e., mutual combat) with a person;
 ...
 (d) Low-moderate infractions include the following:
 ...
 (13) using abusive or obscene language or gesture that is likely to provoke a fight or that clearly disrupts or interferes with the security or orderly administration of the facility....

**3.** The superior court concluded that Anthoney's punishment of fifteen days punitive segregation, reduced from thirty days by the SCCC supervisor, was not excessive for this lesser infraction because "22 AAC 05.470 provides that a prisoner not be confined in punitive segregation for a period exceeding 20 days for a low-moderate infraction."

**4.** As Anthoney points out in his briefing, the superior court did not conclude that all of his procedural due process claims were without merit. Regarding the SCCC's failure to preserve security video footage and seeming limitation of Anthoney's ability to call a witness at his hearing, the superior court simply found that, because Anthoney had already admitted accusing Jimenez of "acting like a jerk," neither action could have prejudiced Anthoney in his hearing.

**5.** *Hutchins v. Schwartz,* 724 P.2d 1194, 1204 (Alaska 1986).

dard of review even where the trial court is acting as an intermediate appellate court and awarding fees and costs under the Alaska Rules of Appellate Procedure.[6] We overturn prevailing party determinations "only if they are manifestly unreasonable."[7]

## IV. DISCUSSION

■ Alaska Appellate Rule 508(c) provides that, "[i]n cases of partial affirmance and partial reversal, the court will determine which party, if any, shall be allowed costs." As we have held, the prevailing party "is the one who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention."[8] The superior court in this case found that Anthoney prevailed on "the main issue on appeal"—whether Anthoney had been "charged with the wrong offense"—and that "[a]lthough the State succeeded on more points than Anthoney, these points combined were less significant than the point affirmed by the Court in favor of Anthoney."

The State disputes both of these findings and argues that the superior court abused its discretion in designating Anthoney the prevailing party. In its briefing, the State characterizes the main issue in the case as "whether [Anthoney] was guilty of violating 22 AAC [05.]400." The State argues that because Anthoney was found guilty of the low-moderate infraction defined in 22 AAC 05.440(d)(13), the State prevailed on this issue. We disagree.

As Anthoney explains in his reply brief, the State's argument focuses on Anthoney's "original belief that he was not guilty of any infraction" instead of his main argument on appeal—that he was wrongfully found guilty

of "mutual combat." From our review of the record below, it is clear to us that Anthoney appealed his conviction because he had been found guilty of an infraction that he believed he had not committed. Anthoney's initial appeal to the superintendent was titled, "Grounds for Appeal of Infraction 22 AAC 05.440(c)(1)," indicating that he specifically appealed his "mutual combat" charge. Anthoney's first point under that title was, "Insufficient Evidence To Support Charged Infraction," under which he asserted that the definition of "mutual combat" necessarily included a *physical* exchange." (Emphasis in original.) Although Anthoney also argued that his actions "did not even rise to the level of an infraction" under 22 AAC 05.440(d), he had never been charged with any lesser infraction and thus was not appealing a guilty finding involving the lesser infraction. For these reasons, the superior court appears to have been correct in its finding that whether Anthoney had been "charged with the wrong offense ... was the main issue on appeal." Certainly, the superior court did not abuse its discretion in making this finding.

The State also asserts that the superior court's decision "favors the State in an overall sense" because Anthoney did not prevail on any of his procedural due process claims and because Anthoney was not granted all the relief he sought. This argument is without merit.

■ We have consistently held that to be designated the prevailing party, a party need only prevail on the main legal issues in the case.[9] Even a plaintiff who recovers on only one claim may be designated the prevailing party.[10] And while the State is correct that receiving an affirmative recovery does not guarantee prevailing party status,[11] we have

6. *Rosen v. State Bd. of Pub. Accountancy,* 689 P.2d 478, 482 (Alaska 1984).

7. *Progressive Corp. v. Peter ex rel. Peter,* 195 P.3d 1083, 1092 (Alaska 2008) (citing *Interior Cabaret, Hotel, Rest. & Retailers Ass'n v. Fairbanks N. Star Borough,* 135 P.3d 1000, 1002 (Alaska 2006)).

8. *K & K Recycling, Inc. v. Alaska Gold Co.,* 80 P.3d 702, 721 (Alaska 2003); *see also Blumenshine v. Baptiste,* 869 P.2d 470, 474 (Alaska 1994) ("We have consistently held that the prevailing party is the one who prevailed on the main

issues. A plaintiff may prevail even if he or she failed to recover all of the relief prayed for.").

9. *K & K Recycling,* 80 P.3d at 721; *Blumenshine,* 869 P.2d at 474.

10. *See Progressive Corp.,* 195 P.3d at 1093.

11. *See Hutchins v. Schwartz,* 724 P.2d 1194, 1196, 1204 (Alaska 1986) (holding that trial court did not abuse its discretion by naming defendant the prevailing party where plaintiff recovered $1,937.09 less forty percent on a claim for

also held that "plaintiffs should not be penalized for recovering less than what they originally sought."[12] In *Progressive Corp. v. Peter ex rel. Peter*, the plaintiff lost fourteen of his original sixteen claims, including one large punitive damages claim, and prevailed on only one claim.[13] The lower court nonetheless concluded that the plaintiff had prevailed on the main issue in the case and, on appeal, we held that the lower court had not abused its discretion.[14] That courts should not count claims to determine prevailing party status is particularly apparent where, as here, the plaintiff is pro se and may not know which of his or her possible claims are likely to be successful. For these reasons, the superior court did not abuse its discretion in naming Anthoney the prevailing party "[a]lthough the State succeeded on more points than Anthoney."

## V. CONCLUSION

Because the superior court acted within its discretion when it designated Anthoney the prevailing party and awarded him costs, we AFFIRM the superior court's judgment.

CARPENETI, Chief Justice, and CHRISTEN, Justice, not participating.

---

$275,000); *Owen Jones & Sons, Inc. v. C.R. Lewis Co.*, 497 P.2d 312, 313–14 (Alaska 1972) (affirming trial court's decision that defendant who prevailed on main legal issue was the prevailing party despite plaintiff's recovery of $7,363.12).

12. *Progressive Corp.*, 195 P.3d at 1093 (citing *Blumenshine*, 869 P.2d at 474).

13. *Id.* at 1086, 1092.

14. *Id.* at 1093–94. The defendant insurer agreed to pay $75,681.27 on one of the plaintiff's claims after losing a summary judgment motion and having its petition for review of that decision denied. The plaintiff continued to litigate and eventually lost on his remaining claims, but the lower court concluded that the main issue in the case was resolved by its summary judgment ruling in the plaintiff's favor. *Id.*