*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BP PIPELINES (ALASKA) INC., CONOCOPHILLIPS TRANSPORTATION ALASKA, INC., EXXONMOBIL PIPELINE COMPANY, KOCH ALASKA PIPELINE COMPANY, LLC, UNOCAL PIPELINE COMPANY, Owners, and ALYESKA PIPELINE SERVICE COMPANY, as agent for the Owners, | ) ) ) ) ) ) ) ) ) ) ) | Supreme Court Nos. S-14718/14728 S-14737 (Consolidated) Superior Court No. 3AN-06-08446 CI O P I N I O N |
| Appellants/Cross-Appellees, | ) ) | No. 6906 - May 9, 2014 |
| v. | ) ) | |
| STATE OF ALASKA, DEPARTMENT OF REVENUE, STATE ASSESSMENT REVIEW BOARD, and NORTH SLOPE BOROUGH, | ) ) ) ) ) ) | |
| Appellees, | ) ) | |
| FAIRBANKS NORTH STAR BOROUGH and CITY OF VALDEZ, | ) ) ) | |
| Appellees/Cross-Appellants. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Sharon Gleason and Andrew Guidi, Judges.

Appearances: James M. Seedorf, Hughes Gorski Seedorf Odsen & Tervooren, LLC, Anchorage, for Appellants and Cross-Appellees. Mauri Long, Jessica Dillon, and Andalyn Pace, Dillon & Findley, P.C., Anchorage, for Appellee North Slope Borough. Robin O. Brena, Laura S. Gould, and Anthony S. Guerriero, Brena, Bell & Clarkson, P.C., Anchorage, and William M. Walker and Craig Richards, Walker & Richards, LLC, Anchorage, for Appellees and Cross-Appellants Fairbanks North Star Borough and City of Valdez.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

These appeals concern the attorney's fees and costs awarded in the 2006 Trans-Alaska Pipeline System tax assessment case.[1] The superior court decided that the Fairbanks North Star Borough, the City of Valdez, and the North Slope Borough were prevailing parties for purposes of attorney's fees and costs because they had prevailed on the main issues of the case. The court awarded costs pursuant to Alaska Civil Rule 79 and attorney's fees pursuant to Alaska Civil Rule 82(b)(2), which governs fee awards "[i]n cases in which the prevailing party recovers no money judgment." The superior court also applied the enhancement factors of Rule 82(b)(3)(A), (B), and (H) to raise the

---

[1]    We decided the merits of the case in *BP Pipelines (Alaska) Inc. v. State, Dep't of Revenue*, ___P.3d ___, Op. No. 6867, 2014 WL 685986 (Alaska, Feb. 19, 2014).

presumptive award from 30 percent to 45 percent of the prevailing parties' reasonable attorney's fees.

The owners of the Trans-Alaska Pipeline System appeal. They argue that the superior court should have applied Alaska Appellate Rule 508 instead of Civil Rules 79 and 82. In the alternative, they contend that the three municipalities did not prevail as against the owners; that fees should have been allocated between separate appeals; that none of the prevailing parties were entitled to enhanced attorney's fees; and that the Fairbanks North Star Borough's award should have been reduced as recommended by a special master. The Fairbanks North Star Borough and the City of Valdez cross-appeal, arguing that the superior court should have viewed this case as one involving a money judgment for purposes of an attorney's fees award under Rule 82(b)(1) and, in the alternative, that they were entitled to a greater enhancement of their fees.

We affirm.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Alaska Statute 43.56.060 directs the Department of Revenue to annually assess the "full and true value" of oil and gas properties for purposes of determining the property taxes due the State of Alaska and certain affected municipalities. Covered properties include those used for the pipeline transportation of gas or unrefined oil.[2] After the Department conducts its initial assessment, an owner of taxable property or an affected municipality may informally appeal the valuation to the Department.[3] The

---

[2]    AS 43.56.060.

[3]    AS 43.56.110(a).

Department's decision may be further appealed to the State Assessment Review Board.[4] Thereafter, taxpayers and taxing authorities are entitled to appeal the Board's action to the superior court for a trial de novo.[5]

The Trans-Alaska Pipeline System (TAPS) stretches 800 miles from the oil fields of the North Slope to a terminal in the City of Valdez. En route it crosses property within the North Slope Borough (North Slope), the Fairbanks North Star Borough (Fairbanks), and the City of Valdez (Valdez) (called collectively "the Municipalities").[6] TAPS is jointly owned by BP Pipelines (Alaska) Inc. (46.9%); ConocoPhillips Transportation Alaska, Inc. (28.3%); ExxonMobil Pipeline Company (20.3%); Koch Alaska Pipeline Company, LLC (3.1%); and Unocal Pipeline Company (1.4%), and is managed by their agent Alyeska Pipeline Service Company (called collectively "the Owners"). The valuation of TAPS for the 2006 tax year led to a five-week trial de novo in the superior court, a superior court valuation that more than doubled that of the Board, and eventual affirmance on appeal by this court.[7] This related appeal and cross-appeal concern the costs and attorney's fees awarded by the superior court.

## B. The Underlying Case

The proceedings leading up to these appeals began on March 20, 2006, when the Municipalities and Owners appealed within the Department its initial assessment of TAPS at $3.344 billion. The Department's decision adjusted the original

---

[4]     AS 43.56.120(a); AS 43.56.040.

[5]     AS 43.56.130(i).

[6]     Fairbanks and Valdez, though separately represented, have a unified position. For convenience this opinion refers to them as "Fairbanks/Valdez."

[7]     *BP Pipelines (Alaska) Inc. v. State, Dep't of Revenue*, ___ P.3d ___ , Op. No. 6867, 2014 WL 685986 at *1-2 (Alaska, Feb. 19, 2014).

assessment (to $3.641 billion), and the Municipalities and Owners appealed to the Board on April 19, 2006. Following the Board's decision, which again adjusted the assessment upward (to $4.306 billion), the Owners and Municipalities appealed to the superior court.

The first superior court appeal was filed in Anchorage on May 25, 2006, by BP, ExxonMobil, Unocal, and Alyeska, requesting a trial de novo of the TAPS valuation. North Slope entered an appearance in the appeal and Fairbanks/Valdez filed a cross-appeal. The remaining TAPS owners, ConocoPhillips and Koch, together with Alyeska filed a second superior court appeal in Anchorage on June 21, 2006. Again, North Slope entered an appearance and Fairbanks/Valdez filed a cross-appeal in which they listed the same points on appeal as they had in the first appeal. A week later a third superior court appeal was filed by Fairbanks/Valdez in Fairbanks. In July 2006 the three superior court appeals were consolidated for purposes of a single trial de novo before Judge Sharon Gleason in Anchorage.

The trial de novo began on August 10, 2009, and lasted for over five weeks. The main dispute was over the method to be used to calculate "the full and true value" of TAPS. The Municipalities proposed a valuation of $11.570 billion, employing a cost approach that analyzed the replacement cost of TAPS while taking into consideration its enhanced value because of the profitability of the entire oil enterprise as an integrated entity. In contrast, the Owners contended that TAPS should be valued at $850 million, arguing for a tariff/income approach that considered only the income stream that TAPS generated. In the agency proceedings, both the Department and the Board had opted for the cost approach; the superior court ultimately agreed. It found the cost approach to be the best indicator of value and applied it using a "replacement cost new less depreciation" (RCNLD) method, which determines the current replacement cost of the property and then deducts for depreciation.

A second major point of contention was which cost study should be applied to accurately calculate RCNLD: the Owners' study, which estimated the replacement cost at about $8.545 billion, or the study advanced by the Municipalities, which estimated the replacement cost at $18.712 billion. The superior court concluded that the Municipalities' study was more in accord with the statutory standards and accepted its estimate of value. The superior court next decided complex issues regarding the amount of depreciation to be deducted, then concluded that TAPS should be valued at "approximately $9.977 billion — or just over 50% of its estimated replacement cost."

## C.    Award Of Attorney's Fees

The Department and the Municipalities asserted prevailing party status and moved for attorney's fees and costs. Each based its request on Civil Rule 82(b)[8] and sought an increase of the award under the enhancement factors of Rule 82(b)(3). The Owners opposed, arguing in part that Fairbanks/Valdez and North Slope had not prevailed against the Owners, but rather had prevailed against the Department and the Board. The Owners also contested portions of the Municipalities' fee requests and claimed that any attorney's fees, if awarded, should be apportioned between the Owners' appeal and the Fairbanks/Valdez appeal and not subject to enhancement under Rule 82(b)(3).

On July 25, 2011, the superior court entered its first order on attorney's fees and costs. The court found that the Department and the Municipalities were the prevailing parties against the Owners, and it analyzed costs and attorney's fees under Civil Rules 79 and 82. The court awarded fees pursuant to Rule 82(b)(2), applicable to

---

[8]    The Department and Fairbanks/Valdez requested attorney's fees pursuant to Rule 82(b)(1), governing cases in which there is a money judgment. North Slope requested attorney's fees pursuant to Rule 82(b)(2), governing cases in which there is no money judgment.

non-money judgments, instead of Rule 82(b)(1), applicable to money judgments. Consequently, the court began with a presumptive award of 30 percent of reasonable actual fees. It then determined that enhancement to 45 percent was appropriate under Rule 82(b)(3)(A) because of "the complexity of the litigation," under (B) because of "the length of trial," and under (H) because of "the relationship between the amount of work performed and the significance of the matters at stake." The court declined to increase fees based on any of the other Rule 82(b)(3) factors, including (F) ("the reasonableness of the claims and defenses pursued by each side") and (G) ("vexatious or bad faith conduct"), which the prevailing parties had urged the court to apply. The court also refused to allocate fees between the appeals as the Owners had requested. Finally, to address more specific objections to the fee requests, the superior court appointed a special master to help determine the amount of fees that could be considered fair and reasonable.

The special master determined that a 15 percent reduction in Fairbanks's claimed fees would be fair "[b]ecause of a pattern of unnecessary duplication of effort." Fairbanks opposed the recommended decision, arguing that the master failed to recognize that Fairbanks had to put extra time and effort into the case as the leading litigant. On de novo review of the special master's recommendation, the superior court agreed with Fairbanks and declined to reduce its fees. The court awarded the Municipalities their costs, totaling $514,551.14, and 45 percent of their requested attorney's fees, with Fairbanks, Valdez, and North Slope receiving $837,649.84, $478,519.47, and $628,586.55 respectively.

The Owners present the following points on this appeal: (1) as an appellate court in an administrative appeal, the superior court should have applied Appellate Rule 508 instead of Civil Rules 79 and 82 to its awards of costs and attorney's fees; (2) the Municipalities were not prevailing parties as against the Owners; (3) alternatively,

the superior court abused its discretion when it failed to allocate fees and costs between the Municipalities' appeals and the Owners' appeals; (4) the superior court abused its discretion when it enhanced the awards of attorney's fees; and (5) the superior court abused its discretion when it rejected the special master's recommendation to reduce Fairbanks's fee request by 15 percent. Fairbanks/Valdez cross-appeal, arguing that: (1) this case involves a money judgment, and the superior court therefore erred by awarding fees pursuant to Rule 82(b)(2) instead of Rule 82(b)(1); and (2) the superior court abused its discretion by failing to grant a greater enhancement of attorney's fees under Rule 82(b)(3), due to the "unreasonableness of the [TAPS] Owners' positions" and the bad faith or vexatious conduct demonstrated by the Owners' failure to disclose an important study during the case on the merits.[9]

## III. STANDARDS OF REVIEW

"We apply our independent judgment in reviewing conclusions of law,"[10] which includes the superior court's decision whether to apply the Civil Rules or Appellate Rule 508 to awards of fees and costs.[11] We review "a superior court's

---

[9] The Owners have not appealed the Department's prevailing party status or its right to attorney's fees. Two of the Owners' arguments nevertheless implicate the Department: that Appellate Rule 508 governed the awards of fees and costs and should be applied on remand, and that none of the prevailing parties' fees should have been enhanced under Rule 82(b)(3). The Department has not taken a position on this appeal.

[10] *R & Y, Inc. v. Municipality of Anchorage*, 34 P.3d 289, 292 (Alaska 2001).

[11] *Wagner v. Wagner*, 183 P.3d 1265, 1267 (Alaska 2008) (citing *Strong Enters., Inc. v. Seaward*, 980 P.2d 456, 458 (Alaska 1999)) (considering de novo whether trial court should have applied Rule 82(b)(1) or Rule 82(b)(2) in calculating the fee award).

determination of prevailing party status and attorney's fees for abuse of discretion"[12] and "will only reverse if the award is 'arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive.' "[13] If the superior court varies an award under Rule 82(b)(3) it must explain its reasons, and "[l]egal questions involved in exceptions to an award of attorney's fees are reviewed de novo, while exceptions that rely on factual findings are reviewed for clear error."[14]

## IV.    DISCUSSION

### A.    The Superior Court Did Not Err In Applying Civil Rules 82 And 79 Instead Of Appellate Rule 508 To Its Awards Of Fees And Costs.

The Owners argue that the superior court should have awarded fees and costs pursuant to Appellate Rule 508 instead of Civil Rules 82 and 79. They argue that although the superior court was required by statute to provide a trial de novo,[15] the nature of the proceeding was still that of an appeal from an administrative decision; and because it was an appeal, any award of fees had to be made pursuant to the appellate rules. The Owners cite a number of our cases in support of the contention that Appellate Rule 508(e) alone governs awards of attorney's fees in administrative appeals.[16] But

---

[12]    *State v. Jacob*, 214 P.3d 353, 358 (Alaska 2009) (quoting *Braun v. Denali Borough*, 193 P.3d 719, 726 (Alaska 2008)) (internal quotation marks omitted).

[13]    *Wagner*, 183 P.3d at 1266-67 (quoting *Ware v. Ware*, 161 P.3d 1188, 1192 Alaska 2007)).

[14]    *Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, 71 P.3d 845, 848-49, 851 (Alaska 2003) (citing *Dobos v. Ingersoll*, 9 P.3d 1020, 1026 (Alaska 2000)).

[15]    AS 43.56.130(i) ("An owner or municipality may appeal to the superior court for, and is entitled to, trial de novo of the board's action.").

[16]    *See Agen v. State of Alaska, Dep't of Revenue, Child Support Enforcement Div.*, 945 P.2d 1215, 1221 (Alaska 1997) (citing *Royal Krest Const. Inc. v. Municipality* (continued...)

none of the cited cases involved a situation like this one, where the superior court conducted a trial de novo.

The most analogous case is *Bowers Office Products, Inc. v. Fairbanks North Star Borough School District*.[17]  In *Bowers*, in what was essentially an administrative appeal from a school district's contracting decision,[18] the superior court conducted a five-day trial after allowing the disappointed bidder to supplement the administrative record with evidence of " 'additional irregularities' which [allegedly] tainted the bid process."[19]  The superior court awarded attorney's fees pursuant to Civil Rule 82, which we held to be an "appropriate" use of the rule.[20]  While noting that awards of attorney's fees pursuant to Appellate Rule 508 were "the normal course . . . in administrative appeals to the superior court," we observed that *Bowers* presented "a hybrid in that it was an administrative appeal with an augmented record," which thus

---

[16](...continued)
*of Anchorage*, 640 P.2d 133, 134 (Alaska 1981) for the holding that "it is error for a superior court acting as an intermediate appellate court to award fees under Civil Rule 82, rather than under Appellate Rule 508"); *see also Diedrich v. City of Ketchikan*, 805 P.2d 362, 371 (Alaska 1991) (holding that where the superior court treated an action as an administrative appeal, "the Appellate Rules, not the Civil Rules, govern the award of attorney's fees").

[17]     918 P.2d 1012 (Alaska 1996).

[18]     The disappointed bidder had filed an original action in superior court, but the superior court determined that it was actually "an administrative appeal pursuant to AS 22.10.020(d)." *Fairbanks N. Star Borough Sch. Dist. v. Bowers Office Prods., Inc.*, 851 P.2d 56, 57 (Alaska 1992).

[19]     *Bowers Office Prods.*, 918 P.2d at 1013.

[20]     *Id.* at 1015.

"partook of both administrative review and de novo litigation."[21]  The use of Rule 82 acknowledged the reality that the expense and attorney time a party incurs in a trial de novo are more like those of a trial-court proceeding than an appeal.  It follows that in this case, involving an administrative appeal in which proceedings were wholly de novo, the superior court was correct to apply Civil Rules 79 and 82.

Further support for the superior court's decision is found in Appellate Rule 609(b), which states in relevant part:

> (1)  In an appeal from an administrative agency, the superior court may in its discretion grant a trial de novo in whole or in part. . . .  (2)  All further proceedings in such action are governed by the rules governing procedure in the superior court . . . .

The Owners acknowledge Rule 609's requirement that the "rules governing procedure in the superior court" apply in a trial de novo, but they dispute that Rule 82 is one of those rules, citing *State v. Native Village of Nunapitchuk*.[22]  In *Nunapitchuk* we considered whether Rule 82 was a "rule of practice and procedure," thus requiring a two-thirds vote of both houses of the legislature to change it, or "substantive law," meaning it could be changed by a simple majority of each house.[23]  According to the Owners, we acknowledged in *Nunapitchuk* that Rule 82 is substantive when we recognized that it "creates a right to partial attorney's fees."[24]  But a more contextually complete quotation from the opinion shows otherwise:

---

[21]    *Id.*

[22]    156 P.3d 389 (Alaska 2007).

[23]    *Id.* at 395-96.

[24]    *Id.* at 397.

Using the *Ware* test, when we ask whether Rule 82 "creates, defines and regulates rights" or is a "method of enforcing the rights," no clear answer emerges. On the one hand, the rule creates a right to partial attorney's fees, and the attorney's fees awarded under the rule, as *Ware* recognized, can be quite substantial in terms of value. On the other hand, the rule is part of a method for enforcing rights external to court proceedings that are vindicated by the judgment in favor of the prevailing party. If fees were not allowed, the prevailing party would suffer a loss in spite of its victory. A Rule 82 award of partial fees mitigates this effect. *The latter, it seems to us, is the better view*. We believe that the allocation of attorney's fees under the rule is, to use Judge Weeks's language [from his decision in the superior court], "not so much a right of itself but tends to be how rights are enforced."[25]

We concluded that "Rule 82 is a rule of procedure because it more readily falls on the procedure side of the substance and procedure divide under the definitions established by the precedents of this court."[26] The superior court's decision to apply Rules 79 and 82 in this case thus finds support in the command of Appellate Rule 609(b) that "the rules governing procedure in the superior court" apply to trials de novo.[27]

## B. The Superior Court Did Not Err In Determining That Fairbanks/Valdez And North Slope Were Prevailing Parties As Against The Owners.

---

[25]     *Id.* at 397-98 (emphasis added) (citing *Ware v. City of Anchorage*, 439 P.2d 793, 794 (Alaska 1968)).

[26]     *Id.* at 402.

[27]     Appellate Rule 609(b) contemplates trials de novo granted by the superior court "in its discretion." Here, a trial de novo was required by statute, AS 43.56.130(i). We do not need to decide whether Appellate Rule 609(b) nonetheless governed, since we hold that the superior court's use of Civil Rule 82 was otherwise justified under our case law.

In assessing prevailing party status for purposes of awarding attorney's fees and costs, we have consistently held that "[t]he prevailing party is the one who has successfully prosecuted or defended against the action, the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered."[28] A prevailing party need not have received all the relief requested,[29] and a party who recovers on only one of several claims may still be the prevailing party.[30]

In this case, in deciding which parties had prevailed for purposes of Rules 79 and 82, the superior court assessed "the litigation as a whole"[31] and concluded that "the State and each of the Municipalities" were prevailing parties "[o]n the main issues in dispute in the 2006 tax year litigation — including the applicability of the RCNLD approach and the allowable depreciation for economic obsolescence." Again, we review this determination for abuse of discretion.[32]

The Owners do not dispute that the Municipalities prevailed on the main issues in the case. They argue, however, that the Municipalities' appeals were directed against the Department and the Board, not the Owners, and that the Municipalities therefore cannot have prevailed *against them*. They point out that Fairbanks/Valdez filed

---

[28] *Schultz v. Wells Fargo Bank, N.A.*, 301 P.3d 1237, 1242 (Alaska 2013) (quoting *Taylor v. Moutrie–Pelham*, 246 P.3d 927, 929 (Alaska 2011)) (internal quotation marks omitted).

[29] *Id.* (citing *Blumenshine v. Baptiste*, 869 P.2d 470, 474 (Alaska 1994)).

[30] *Id.* (citing *State, Dep't of Corrs. v. Anthoney*, 229 P.3d 164, 167 (Alaska 2010)).

[31] *Chambers v. Scofield*, 247 P.3d 982, 989 (Alaska 2011).

[32] *State v. Jacob*, 214 P.3d 353, 358 (Alaska 2009) (quoting *Braun v. Denali Borough*, 193 P.3d 719, 726 (Alaska 2008)).

appeals only against the Department and the Board, and that North Slope did not file an appeal at all but was a "nominal appellee" in the superior court. The Owners cite two federal cases for the proposition that separate claims tried in a single proceeding may retain "their separate and distinct character."[33] According to the Owners, their separate appeals maintained their separate character despite the consolidation of all appeals in the superior court for a single trial de novo. Consequently, the Owners argue, the Municipalities, even if prevailing parties, did not prevail *against them*, and the Owners cannot be liable for the Municipalities' costs and attorney's fees.

Alaska Statute 43.56.130(i) provides that "[a]n owner or municipality may appeal to the superior court for, and is entitled to, trial de novo of the *board's action*."[34] As with most administrative appeals, the statute itself does not contemplate that interested parties will be arrayed against each other in the case's caption. But Appellate Rule 602 clarifies the parties' relative postures on an appeal. Rule 602(h) states in part:

> All parties to the trial court or agency action when the final order or judgment was entered are parties to the appeal. A party who files a notice of appeal, whether separately or jointly, is an appellant under these rules. All other parties, including the agency in an appeal from an administrative agency decision, are deemed to be appellees.[35]

By operation of this rule, the Owners, because they filed an appeal, were appellants, and each of the Municipalities was automatically deemed an appellee; the reverse was true for the appeals filed by the Municipalities.

---

[33] The Owners cite *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 n.1 (9th Cir. 1987) and *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933).

[34] AS 43.56.130(i) (emphasis added).

[35] Alaska R. App. P. 602(h).

Furthermore, our case law has long made it clear that, regardless of how parties are formally arranged, fees and costs may be awarded based on actual adversity of interests.[36] In *First National Bank of Fairbanks v. Enzler*, a bankruptcy trustee filed an action in the superior court, seeking to set aside an allegedly fraudulent conveyance between the Enzlers, a husband and wife.[37] The bank "was joined as a nominal defendant in the suit" solely because of its status as a creditor.[38] The superior court ruled for the Enzlers following trial and awarded them attorney's fees and costs against the bank.[39] The bank appealed, arguing that it had only been a party because the trustee named it and that the Enzlers would have incurred "substantially the same costs and attorney's fees" had it not been involved.[40] In response, the Enzlers pointed out that the bank had opposed their motion to require the trustee to post a cost bond, had actively participated at trial, and had "join[ed] the trustee on all issues raised on appeal."[41] In light of these arguments, and in recognition of the trial court's discretion in determining "which party prevails and is entitled to costs," we "agree[d] with the trial court's

---

[36] *See Moses v. McGarvey*, 614 P.2d 1363, 1373 (Alaska 1980) ("Under some circumstances a party may be considered to have prevailed over another even though neither has filed a claim.").

[37] 537 P.2d 517, 520 (Alaska 1975).

[38] *Id.*

[39] *Id.* at 525.

[40] *Id.*

[41] *Id.*

alignment of the Bank as a plaintiff below" and affirmed the award of costs and fees against it.[42]

Similarly, in *State ex rel. Palmer Supply Co. v. Walsh & Co.*, a supplier had brought a claim against a general contractor's bonding company, which impleaded a subcontractor as the likely liable party.[43] We found no abuse of discretion in the superior court's award of attorney's fees against the supplier and in favor of the subcontractor, despite the supplier's contention that it could not be liable for fees to a third-party defendant it had not sued.[44] And in *Moses v. McGarvey*, in which a group of shareholders had sued The Aleut Corporation and its president, Moses, we affirmed the superior court's order that Moses reimburse the corporation for the fees and costs assessed against it in the plaintiffs' favor;[45] but at the same time we reversed an award to the corporation of its own fees and costs against Moses, noting that "Moses and the corporation were not aligned on opposing sides of the controversy," and they "used the same attorney and had the same goal."[46]

In this case, the Owners were clearly aligned against the Municipalities on every substantive issue. The Owners and the Municipalities were not just nominally opposing parties; they were the primary litigants. North Slope, too, was bound by any decision regardless of whether it participated in the appeal as more than a "nominal appellee." The great disparity in the value of TAPS urged by the Owners ($850 million)

---

[42]    *Id.* at 526.

[43]    575 P.2d 1213, 1216 (Alaska 1978).

[44]    *Id.* at 1220-21.

[45]    614 P.2d 1363, 1366-68 (Alaska 1980).

[46]    *Id.* at 1373.

and that urged by the Municipalities ($11.570 billion) assured that neither the Municipalities nor the Owners could prevail on the substantive issues in the case without the other side having lost.

The federal cases cited by the Owners are procedurally inapposite.[47] The prevailing party determination in this case was governed by our own case law, and the superior court's decision that the Municipalities were the prevailing parties against the Owners was consistent with that case law and well within the bounds of the court's discretion.

C.   **The Superior Court Did Not Err By Declining To Allocate Fees Between The Owners' Appeals And The Municipalities' Appeals.**

The Owners also argue that our case law required the superior court to allocate fees between the appeals brought by the Owners and those brought by the Municipalities. According to the Owners, "[w]hile there is no question that both appeals were addressed within a single trial proceeding and that the claims in the two sets of appeals overlapped with each other, there was never any restructuring of the case that altered the separate and distinct nature of the pleadings," and "[i]n the absence of such a restructuring, the fact that [Fairbanks/Valdez] prevailed in their appeal against [the Department] does not make them prevailing parties with respect to the Owners' separate appeal." This appears to be largely a restatement of the preceding argument: that is, that

---

[47]     In *Cont'l Airlines v. Goodyear Tire and Rubber Co.*, the court held that consolidation of two federal products liability cases did not affect the diversity jurisdiction in either case, as diversity jurisdiction "depends upon the state of the parties at the commencement of the suit." 819 F.2d 1519, 1523 n.1 (9th Cir. 1987) (quoting *Connolly v. Taylor*, 27 U.S. (2 Pet.) 556, 565 (1829)). In *Johnson v. Manhattan Ry. Co.*, the Court held that despite the consolidation of two suits, one a receivership and the other a creditor's challenge to the receiver's orders, the second suit was still "collateral" to the first and therefore required proof that the receiver lacked jurisdiction, not simply that he erred, before his orders could be set aside. 289 U.S. 479, 496-97 (1933).

while the Municipalities may have prevailed in their separate appeals, the Owners were not parties to those appeals and cannot be liable for attorney's fees allocated to those appeals; and while the Owners did not prevail in *their* separate appeals, the Municipalities were not parties to those appeals and cannot be awarded attorney's fees allocated to those appeals. We reject this argument for the reasons given above. The issues in the appeals were the same; the adversity of interests was the same; and the appeals were logically consolidated and tried together. The superior court was not required to treat the appeals as if they maintained a "separate and distinct nature" that was belied by the actual proceedings.

The Owners cite two cases in support of their allocation argument. In *Myers v. Snow White Cleaners & Linen Supply, Inc.*,[48] we held that the superior court's award of 20 percent of actual attorney's fees to a prevailing defendant "was a reasonable allocation between [the defendant's] actual attorney fees and costs necessarily incurred defending against the [plaintiffs'] direct claim, as opposed to fees spent defending against the cross-claims of the other defendants."[49] We did not hold in *Myers* that the allocation among these claims was *required* — only that it was within the superior court's discretion. In the Owners' other suggested authority, *Lyman v. State*,[50] we reversed a Rule 82 award of attorney's fees against a pro se litigant in a case in which four of his five causes of action were brought under federal civil rights statutes, and federal law, with a higher standard of frivolousness, governed any fee awards related to

---

[48] 770 P.2d 750 (Alaska 1989).

[49] *Id.* at 753.

[50] 824 P.2d 703 (Alaska 1992).

-18-                                                                6906

those claims.[51]  The Owners argue that "the need for allocation of fees between separate federal and state claims" is "akin to the need for an allocation where separate proceedings are consolidated for trial purposes," but we disagree.  The federal and state claims at issue in *Lyman* implicated different rules governing the award of fees; the consolidated appeals at issue here do not.

In declining the Owners' request that attorney's fees be allocated between the appeals of the Owners and the Municipalities, the superior court explained:

> The Alaska Supreme Court has held that "[e]ach request for fees or costs to a prevailing party in a multiparty lawsuit should be considered objectively on its own merits." *Myers v. Snow White Cleaners & Linen Supply, Inc.*, 770 P.2d 750, 753 (Alaska 1989).  In this case, on most of the main issues in the 2006 tax year trial de novo, the Owners were aligned against the positions of both the State and the Municipalities.  All of the moving parties received a substantial additional tax payment as a result of the 2006 decision.  As such, with respect to each of the requests for fees and costs before this court, this court finds that the Owners should be solely responsible for the amounts to be awarded to each of the moving parties.  Stated differently, even though the different appeals of the parties were consolidated into one trial de novo for the 2006 tax year, this court finds that it is appropriate to allocate 100% of each of the moving parties' fee award[s] to the Owners.

Again, we conclude that the superior court's decision on this issue — whether to allocate attorney's fees between the appeals — was consistent with our case law and well within its discretion.

---

[51]  *Id.* at 707 (citing 28 U.S.C. § 1875(d)(2) (1988) and *DeNardo v. Municipality of Anchorage*, 775 P.2d 515, 518 (Alaska 1989).

**D. The Superior Court Correctly Applied Rule 82(b)(2) For A Non-Money Judgment Instead Of Rule 82(b)(1) For A Money Judgment.**

Fairbanks/Valdez appeal the superior court's decision to award attorney's fees pursuant to Rule 82(b)(2) instead of Rule 82(b)(1). Rule 82(b)(1) governs "the award of attorney's fees to a party recovering a money judgment in a case," while Rule 82(b)(2) governs "cases in which the prevailing party recovers no money judgment." The key distinction here is in how the award is calculated. The presumptive fee schedule of Rule 82(b)(1) awards a prevailing party 20 percent of the first $25,000 of the total money judgment and 10 percent of the remainder. Rule 82(b)(2) awards a presumptive 30 percent of reasonable actual attorney's fees for a case going to trial. In cases resulting in a large money judgment, a Rule 82(b)(1) award will often exceed the allowable percentage of actual reasonable attorney's fees calculated under Rule 82(b)(2). In this case, Fairbanks/Valdez claim they would receive $4,089,208.50 under Rule 82(b)(1), as opposed to the $1,316,169.31 they were collectively awarded under Rule 82(b)(2)-(3), based on their actual fees.

In assessing which section of Rule 82 should apply, the superior court relied upon *Strong Enterprises, Inc. v. Seaward*,[52] which involved a dispute between Seaward and his former partners. Seaward prevailed in the superior court on the majority of the issues, and the superior court ordered an accounting and required his former partners to pay for his stake in the partnership.[53] Seaward was awarded the presumptive 30 percent of his actual reasonable attorney's fees under Rule 82(b)(2), but on appeal his former partner, Strong, argued that Rule 82(b)(1) should apply because

---

[52]     980 P.2d 456 (Alaska 1999).

[53]     *Id.* at 457-58.

money was to change hands as a result of the judgment.[54] Though we acknowledged that a money judgment is generally one "that requires money to 'change hands,' "[55] we disagreed that Seaward had obtained a money judgment:

> Several circumstances persuade us that Seaward did not recover a money judgment. The final judgment required Seaward's former partners to perform accountings and required Strong to pay Seaward for his interests in two partnerships. It did not specify the amounts payable, nor did it specify how the parties should calculate those amounts. It simply specified the general procedure by which Seaward's total recovery could be determined. Nor was it merely preliminary to entry of a more specific judgment. Rather, it was self-executing and did not require the parties to return to court for approval of the accountings or the amounts to be paid as determined by the accountings. Assuming no further disputes, complying with the judgment would have required no further judicial intervention and no entry of a specific damages award.[56]

In this case, the superior court found *Strong Enterprises* to be closely analogous. The superior court held that the Department would have to perform an accounting of sorts to determine taxes due; that the final judgment only stated a general procedure for how the calculations would be made; that the calculations were not preliminary to a final and more specific judgment; and that the judgment was self-executing, requiring no further judicial intervention. Consequently, the superior court determined that the Municipalities did not receive a money judgment and that Rule 82(b)(2) applied.

---

54      *Id.*

55      *Id.*

56      *Id.*

Fairbanks/Valdez dispute the superior court's application of *Strong Enterprises*. They contend primarily that the judgment's procedure for payment, though not specifying the exact amount to be paid, prescribed a statutory process that would result in an exact calculation of the amounts owed to the Municipalities. They argue that unlike the accountings in *Strong Enterprises*, the final judgment allowed for no discretion, but rather ordered the Department to issue a supplemental assessment roll based on the new 2006 value of TAPS[57] pursuant to statutory law.[58]

Fairbanks/Valdez also direct our attention to *Atlantic Richfield Co. v. State*[59] and *State, Commercial Fisheries Entry Commission v. Carlson*,[60] both of which, they contend, demonstrate that a money judgment exists whenever the judgment results in money changing hands.[61] In *Atlantic Richfield*, taxpayers disputed the oil and gas

---

[57] The superior court's final judgment on the merits stated:

> The Alaska Department of Revenue shall issue a supplemental certified assessment roll reflecting the 2006 value of TAPS within 30 days of the date of this Final Judgment Entered Under Civil Rule 54(b), which shall form the basis for the affected municipalities to issue new tax bills, and for the calculation by the Department of any applicable tax credits under AS 43.56.010(d).

[58] *See* AS 43.56.140 and 15 Alaska Administrative Code (AAC) 56.045.

[59] 723 P.2d 1249, 1252 (Alaska 1986).

[60] 270 P.3d 755, 765 (Alaska 2012).

[61] Fairbanks/Valdez also direct us to a Ninth Circuit case, but we do not find it particularly apt. In *Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, the court held that a judgment confirming an arbitral award was a "money judgment" for purposes of post-judgment interest, reasoning that "although the judgment does not spell out the amount of the

(continued...)

corporate income tax and requested a refund of taxes already paid.[62] We upheld the tax as constitutional; we also held that the State had not received a money judgment for purposes of Rule 82 because no money changed hands.[63] We reasoned that "[t]he taxpayers paid the challenged tax under protest, then sued for a refund; hence, the [S]tate's victory resulted in no money judgment."[64] Fairbanks/Valdez read this as implying that if money *had* changed hands — if the taxpayers had not already paid the challenged taxes and were required to do so as a result of the judgment, or if the taxpayers had prevailed, requiring the State to refund the taxes already paid — then there would have been a money judgment.

*Carlson* was a class action suit brought by non-resident fishermen who challenged the higher cost of non-resident commercial fishing licenses.[65] We held that the law violated the privileges and immunities clause of the federal constitution, and we remanded to the superior court to determine the difference between fees paid by non-resident and resident fishermen so the amount could be refunded.[66] The superior court calculated the refund and entered a final judgment for the plaintiffs totaling over $82

---

[61](...continued) [arbitration] award, a definite and certain designation of the amount [owed] is readily discernible by looking to the arbitration award itself." 665 F.3d 1091, 1101 (9th Cir. 2011). Here, in contrast, supplemental taxes still needed to be calculated and assessed at the time the judgment was entered. Unlike in *Ministry of Defense*, a "definite and certain designation of the amount [owed]" could not be "readily discern[ed.]"

[62] 723 P.2d at 1250-52.

[63] *Id.* at 1252.

[64] *Id.* at 1252 n.5 (citation omitted).

[65] 270 P.3d at 757.

[66] *Id.* at 759.

million for principal and prejudgment interest, along with attorney's fees calculated on the money judgment pursuant to Rule 82(b)(1).[67] Fairbanks/Valdez point out that the judgment in *Carlson* was based on the State's calculations of the refunds due; that here, too, the payments to the taxing authorities are based on the State's calculations; and that in *Carlson* we upheld the superior court's use of Rule 82(b)(1) to calculate attorney's fees. But in *Carlson*, unlike this case, the superior court actually entered a money judgment; and the superior court's consequent use of Rule 82(b)(1), as opposed to Rule 82(b)(2), was not challenged on appeal.[68]

Neither *Atlantic Richfield* nor *Carlson* is sufficiently like this case to direct its outcome. An important factor here is the nature of the task set for the superior court on the administrative appeal. The superior court's task was to conduct a trial de novo of the Board's action[69] — principally, to determine the "full and true value" of TAPS.[70] No party asked for entry of a money judgment, nor was it the superior court's task to enter one. To calculate, assess, and collect taxes on the basis of the superior court's assessment of the "full and true value" of TAPS was the responsibility of the taxing authorities after the superior court had completed its work.

We accordingly agree with the superior court that the result in this case follows from our holding in *Strong Enterprises*. As in *Strong Enterprises*, the final judgment in this case did not specify the amount of the Owners' tax liability; it did not

---

[67]     *Id.* at 757, 759-60.

[68]     *See id.* at 766. The State in *Carlson* challenged the trial court's use of the Rule 82(b)(1) schedule for cases that are "contested with trial," arguing that a three-day evidentiary hearing did not qualify as a "trial." *Id.* The State did not challenge the premise that the case fell under *some* category of Rule 82(b)(1).

[69]     AS 43.56.130(i).

[70]     AS 43.56.060.

direct the parties how to calculate the amount of taxes due; it "simply specified the general procedure" for determining that amount.[71] Furthermore, like the judgment in *Strong Enterprises*, the judgment here was not "preliminary to entry of a more specific judgment [but rather] was self-executing and did not require the parties to return to court for approval" of the determination of the amounts of taxes to be paid.[72] And finally, as in *Strong Enterprises*, "[a]ssuming no further disputes, complying with the judgment would have required no further judicial intervention and no entry of a specific damages award."[73] We conclude that the superior court properly awarded fees under the provisions of Rule 82(b)(2).

## E. The Superior Court Did Not Abuse Its Discretion In Its Consideration Of The Rule 82(b)(3) Enhancement Factors.

### 1. The superior court did not err by granting the Municipalities a 15 percent enhancement under Rule 82(b)(3)(A), (B), and (H).

Civil Rule 82(b)(3) allows the court to vary an attorney's fee award if it determines a variance is warranted based on listed factors. Here, the superior court enhanced attorney's fees from Rule 82(b)(2)'s presumptive rate of 30 percent (for a contested case that goes to trial) to 45 percent. This enhancement was based on several listed factors: (A) ("the complexity of the litigation"), (B) ("the length of trial"), and (H) ("the relationship between the amount of work performed and the significance of the matters at stake"). The Owners challenge the enhancement on several grounds.

First, the Owners assert that the complexity and length of trial are already reflected in the attorneys' billable hours, and they argue that these factors therefore

---

[71] *See Strong Enters., Inc. v. Seaward*, 980 P.2d 456, 458 (Alaska 1999).

[72] *See id.*

[73] *See id.*

cannot stand alone as justification for an enhancement. The Owners cite *Tenala, Ltd. v. Fowler*,[74] in which we observed that "complexity works poorly as an independent enhancing factor in Rule 82(b)(2) cases where hourly fees, rather than the amount of a money judgment, serve as the measure of the fees to be awarded."[75] But in *Tenala* we nonetheless affirmed the superior court's use of complexity as the sole enhancing factor, explaining that the over-counting that results from considering both hourly billings and complexity "points to a weakness in the rule, not to trial court error."[76] In *Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, too, we accepted both length and complexity as proper factors for enhancement, noting that they are "explicitly listed as permissible considerations under Civil Rule 82(b)(3), and therefore are an appropriate basis for the trial court's decision."[77] And in *Ware v. Ware* we stated, "While we have occasionally expressed concern about the use of factor (A) — complexity of the litigation — to enhance fees . . . we have repeatedly upheld its use."[78] Accordingly, as there is no question that the trial in this case was lengthy and complex, we cannot say that the superior court abused its discretion when it used factors (A) and (B) of Rule 82(b)(3) to enhance its award of attorney's fees.

The Owners also argue that the superior court improperly referred to a theoretical award of attorney's fees made under Rule 82(b)(1), for cases involving a money judgment, in deciding whether to apply factor (H), "the relationship between the

---

[74]    993 P.2d 447 (Alaska 1999).

[75]    *Id.* at 451 n.19.

[76]    *Id.*

[77]    71 P.3d 845, 851 (Alaska 2003).

[78]    161 P.3d 1188, 1199 (Alaska 2007).

amount of work performed and the significance of the matters at stake."  But we see nothing objectionable in the superior court's reference to Rule 82(b)(1) by analogy.  The court wrote, "One indication of [the significance of the issues at stake] is demonstrated by the far greater amount of fees that would have been awarded had the 2006 judgment constituted a 'money judgment,' as set forth in the Municipalities' briefing."  The court went on to state that "[t]he case involved the valuation of one of the largest assets in the state, and while not public interest litigation, the 2006 tax year litigation certainly has a significant impact on the taxing authorities, the taxpayers and the public."

We further note that this case has been litigated for over eight years, and the Municipalities calculate that it will result in the Owners paying the State and Municipalities a combined total of $152,491,572 in supplemental taxes for the 2006 tax year.  That the issues at stake were significant and that they justified a large amount of work by both sides cannot seriously be disputed.  The superior court did not abuse its discretion when it applied the factor of Rule 82(b)(3)(H) to enhance the fees awarded.

> **2.    The superior court did not abuse its discretion by failing to award a greater enhancement of Fairbanks/Valdez's attorney's fees.**
>
> **a.    The 2005 study and Rule 82(b)(3)(G)**

Rule 82(b)(3)(G) provides for the enhancement of attorney's fees because of the other side's "vexatious or bad faith conduct."  The superior court declined to find such conduct in this case.  Fairbanks/Valdez allege, however, that the Owners acted in bad faith and vexatiously when they failed to disclose a 2005 study that allegedly contradicted some of their positions at trial.  Fairbanks/Valdez contend that they are entitled to further enhancement of their reasonable attorney's fees under Rule 82(b)(3)(G) to reach at least 75 percent, if not 100 percent.

Fairbanks/Valdez contend that they made numerous requests for studies like the 2005 study during discovery but that it was not made available until the subsequent trial de novo involving the 2007-2009 tax years. They assert that the superior court was not aware of the existence of the study until June 2011 and could not have reviewed the study's conclusions before July 25, 2011, the date it issued its Order re Motions for Costs and Attorney's Fees.

But this argument was never raised in the superior court. Fairbanks/Valdez concede that they had a copy of the 2005 study as early as December 2010, and they referenced its key conclusions in a June 2011 motion. They could have presented the information to the superior court before it ruled on the attorney's fees motions, or, if justified, they could have asked the superior court to reconsider its attorney's fees order on the basis of newly discovered evidence. Simply put, the superior court in the 2006 tax appeals never heard an argument for enhancement based on the late production of the 2005 study, and we will not consider the issue in the first instance on appeal.[79]

b. **The reasonableness of the Owners' claims under Rule 82(b)(3)(F)**

Rule 82(b)(3)(F) allows the court to vary the presumptive 30 percent of reasonable actual attorney's fees under Rule 82(b)(2) based on "the reasonableness of the claims and defenses pursued by each side." In its order on attorney's fees, the superior court took note of the Owners' "trial position . . . that TAPS was worth a total of $850 million" and stated that the reasonableness of this position "could be questioned," juxtaposing that amount with "the comparable amounts that have recently been invested into replacing far shorter transit pipelines from Prudhoe Bay to Pump

---

[79] *Mills v. Hankla*, 297 P.3d 158, 167 (Alaska 2013) (noting that we do not address new issues or theories that were not presented in the trial court).

Station 1."[80] The superior court declined to give the "reasonableness" factor any weight, however, given the lack of controlling precedent on the governing valuation standards in AS 43.56.060(e).

Fairbanks/Valdez maintain that the Owners' reliance on the tariff income valuation method was unreasonable. They also note that the Owners' proposed valuation of $850 million was less than 10 percent of the value ultimately found by the superior court. Consequently, they argue that the superior court abused its discretion when it failed to apply an additional enhancement under Rule 82(b)(3)(F) based on the unreasonableness of the Owners' position.

But the superior court has wide discretion in determining awards of attorney's fees.[81] Despite the superior court's observation that "the reasonableness of the Owners' 2006 trial position could be questioned," its further conclusion — that there was no controlling law to constrain the parties' litigation positions — is also sound. The court was not required to further enhance the fee award beyond the 45 percent it had reached by applying other relevant factors of Rule 82(b)(3).[82]

F. **The Superior Court Did Not Abuse Its Discretion When It Rejected The Special Master's Recommendation That Fairbanks's Fee Request Be Reduced By 15 Percent.**

In its July 25, 2011 order on costs and attorney's fees, the superior court asked that a special master review the prevailing parties' billings for reasonableness. The

_____

[80] The superior court's amended decision noted that "there are two, 24-mile-long transit lines from the Prudhoe Bay field to Pump Station 1 that were recently replaced at a cost in excess of $600 million."

[81] *Keenan v. Wade*, 182 P.3d 1099, 1109 (Alaska 2008).

[82] Rule 82(b)(3) specifies that "[t]he court *may* vary an attorney's fee award . . . if, upon consideration of the factors listed below, the court determines a variation is warranted" (emphasis added).

special master determined that "[Fairbanks's] redacted billing records suggest that [Fairbanks] often had two and sometimes three attorneys working on the same effort." Though recognizing that "this litigation was highly complex and that the money stakes were considerable," the special master found that "[Fairbanks] had a pattern of duplication of work that was unreasonable for purposes of a Rule 82 analysis." He therefore concluded that only 85 percent of Fairbanks's actual attorney's fees were reasonable.

Fairbanks objected to the recommended reduction. The superior court reviewed the special master's findings de novo[83] and determined that the reduction was not warranted.

The Owners argue that the superior court abused its discretion in setting aside the reduction, because its acknowledgment of duplicative work is inconsistent with

---

[83] Alaska Civil Rule 53(d)(2)(B) requires that when a party objects to a special master's recommendation, "[t]he court must consider under a de novo standard of review all objections to findings of fact made or recommended in the report, and must rule on each objection."

its ultimate conclusion that the attorneys' efforts were "not unreasonable."[84]  But the superior court's decision of the issue was expressly based on its own "considerably greater familiarity with the details of the case."  Specifically, the court concluded that the master made a mistake in underestimating the amount of discovery in the case, and the court relied on its own better understanding of the "role of each of the lead attorneys participating in the case, the complexity of the document management, and the extensive legal issues that were presented."  The court found the research, drafting, and discovery tasks were not in fact duplicative, and it noted in particular that it was not unreasonable for Fairbanks to sometimes have several lawyers in court given the way the court conducted its proceedings.  This detailed explanation, explicitly based on the superior court's close familiarity with the litigation and supported by findings of fact that are not clearly erroneous, is more than sufficient to support the court's decision to reject the special master's recommended reduction in fees.

## V.    CONCLUSION

We AFFIRM the superior court's decisions on attorney's fees and costs.

---

[84]    The Owners cite *Demoski v. New*, 737 P.2d 780, 787 (Alaska 1987), in which duplicative billings were one factor supporting the trial court's modest fee award.  But the award in *Demoski* was based on a number of findings without parallel here:

> The court found that one of the attorneys [for the plaintiffs] had impermissibly overcharged them, that the billings were duplicative, that a substantial amount of the services performed related to [unrelated claims], and that counsel for the [prevailing parties] generated much unnecessary work by making vituperative attacks on opposing counsel and parties and by failing to follow the civil rules and the provisions of the pre-trial order.

737 P.2d at 787.